[S. F. No. 12961. In Bank.—February 27, 1929.]

T. L. BALDWIN et al., Petitioners, v. RAILROAD
COMMISSION OF CALIFORNIA, Respondent.

582

Stephen W. Downey and Downey, Brand, Seymour & Dunn for Petitioners.

Carl I. Wheat, Reginald L. Vaughan and Roderick B. Cassidy for Respondent.

J. E. Woolley, Sutherland & Dearing and W. A. Sutherland for San Joaquin and Kings River Canal and Irrigation Company.

Vincent J. McGovern for San Joaquin River Water Storage District.

THE COURT.—This proceeding was brought to review and annul an order of the Railroad Commission authorizing the transfer of the physical properties and water rights of the San Joaquin and Kings River Canal and Irrigation Company, Incorporated, a privately owned public utility

corporation, to the San Joaquin River Water Storage District, a public agency organized and existing under the California Water Storage District Act as amended (Stats. 1921, p. 1727; Stats. 1923, p. 941; Stats. 1927, p. 1235). ▮ That act has been held constitutional in all respects bearing upon the proceeding at bar. (*Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983].)

On May 2, 1927, the directors of the storage district approved a contract for the purchase by the district of the physical properties, canal system and crop land water rights of the San Joaquin and Kings River Canal and Irrigation Company for the aggregate sum of $4,400,100, and approved the purchase by the storage district of a so-called grass land water right claimed by Miller & Lux, Inc., for the sum of $1,767,300. The grass land water right grew out of an agreement made in 1878 between Miller & Lux and the predecessor of the canal company, whereby the latter was given certain rights of way and the right to appropriate about 800 second-feet of water for crop purposes, and when not required for crop purposes, the canal company agreed to serve it to the grass lands of Miller & Lux. The storage district and the canal company joined in an application to the Railroad Commission for an order authorizing the transfer and approving the contemplated contract of purchase and sale between the parties. The petitioners herein are consumers served by the canal company, acting on behalf of all the owners of lands served by the canal company included within the district with the exception of Miller & Lux, Inc. These consumers other than Miller & Lux, Inc., opposed the application of the canal company and the storage district for authority to transfer. Several grounds of protest were urged in an effort to show to the commission that the terms of the transfer were highly detrimental to the consumers of the canal company. Among other grounds the protestants urged: (1) that the acquisition of the public utility by the storage district is neither necessary nor essential to the future functioning of the district; (2) that the contract valuations are grossly unreasonable and unjust; (3) that these excessive valuations would have to be absorbed by the consumers in the form of district assessments which would result in an unbearable financial burden to the consumers and would prevent the continuance of adequate

service by the vendee, the storage district, at reasonable rates; (4) that the storage district contemplated serving waters to about 300,000 acres of dry land within the district which theretofore had not been served, thus diverting to other lands water which had been dedicated to the lands of the petitioners and which would, under the plan of water re-allocation proposed by the directors, result in a shortage of service thereto, and (5) that Miller & Lux, Inc., does not own any grass land water right, but that all water rights are owned by the public utility, and that such a division of rights is arbitrary, unjustified and prejudicial to the consumers.

Hearings were had before or at the direction of the Railroad Commission and evidence was introduced by the protestants in support of their opposition. On February 17, 1928, the commission rendered its decision and order authorizing the transfer from the canal company to the storage district of the former's physical properties, canal system and water rights for the sum of $4,400,100, which was the purchase price set by the parties in their contract. In its decision the Railroad Commission stated: "The grounds of protest direct themselves, with the exception hereinafter noted and commented upon, to the policy of the law expressed in the Water Storage District Act and to the possibility of administration in the future by the duly constituted officers of the district to the detriment of these particular protesting consumers. Under this head may be classed all of the grounds of protest of the objecting consumers with the exception of the protest on the ground that, by reason of its vast land holdings, Miller & Lux, Incorporated, dominated the election within the district, and these consumers have had no voice whatever in the affairs of the district, and that the proposed sale contract has been entered into between the corporation controlled by Miller & Lux, Incorporated, and directors of the water storage district, a majority of whom have been elected by Miller & Lux, Incorporated, and were Miller & Lux representatives on the board of the district and, therefore, the contract has not received independent and fair consideration by directors uncontrolled by Miller & Lux, Incorporated, which it should have on behalf of the land owners within the district. However, it appears from the evidence that at a time when a previous report was made

to the state engineer for his consideration as to whether the plan proposed in the report submitted to him for consideration was a feasible one, this same objection was there raised, and that, pursuant to said objections, all members of the board of directors of the storage district who were Miller & Lux representatives resigned from the board and the state engineer suggested four individuals, men of unquestioned integrity and good judgment who have the best interests of this community in mind, all of whom were appointed to membership on the board. In the membership of the district board, as the same was constituted at the time the contract, approval of which is sought, and this application were presented to it for consideration, there were no members who could have been said to be the representatives of Miller & Lux, Incorporated. After a consideration of the project as it is now alleged in the petition to have been formed, these directors of the district have determined to purchase the properties from the utility company upon the basis set forth in the contract. . . . Under the provisions of the 'Water District Act,' the duty is imposed and the power conferred upon the proper officials of the district to make determination as to what properties are necessary for the proper functioning of the storage district, the amount that shall be paid therefor and the manner in which the district, after the acquiring of such properties as it deems necessary, shall be operated. The district, through its proper officers, having made this determination, it but remains for the commission to determine whether or not the utility should be permitted to sell its properties and discontinue service. The policy of the commission heretofore has been, in applications of this character, to see either that all consumers, which have theretofore been served by a public utility, when it is transferred to a governmental agency, are either included within the boundaries of the governmental agency or district, or if not so included, that thereafter service be compelled by the district and protected to the consumer whose lands are excluded from the boundaries of the district.''

In accordance with the views expressed, the commission refused to consider any of the grounds of protest and the evidence adduced in support thereof, with the exception noted by it, and held that its only concern in this case was

the protection of the consumers whose lands remained outside the boundaries of the district. The commission concluded that protection was afforded outside consumers by a provision in the contract of transfer which bound the storage district to continue service to such consumers of the canal company contingent upon payment by said consumers to the district of all legal charges for such service; that the same provision in the contract bound the storage district to continue service to consumers within the district, such service to be rendered in accordance with the provisions of the Water Storage District Act and subject to the assessments for the benefits received as provided by the act; that "this provision of the contract is broad enough to protect each and all of the consumers of the canal company who are, after the transfer, entitled to receive service from the system." It cannot be disputed that under the proposed contract of purchase the storage district binds itself to continue service to all of the consumers of the canal company. It also appears that it is not the purpose to deprive or attempt to deprive any area of land of its water rights.

The commission's decision also states: "In authorizing the transfer of this public utility property to the water storage district, it should be distinctly understood that the commission does not thereby in any manner endorse or approve or find upon the reasonableness of the value claimed or of the reasonableness of the price which the district has agreed to pay for the physical properties and water rights of this utility. As to whether or not the project is a feasible one, considered as a whole, is a matter under the 'Water Storage District Act,' delegated to the board of directors of the district and to other public bodies, and, finally, to the landowners within the district. Neither should the authorization by this commission to make this transfer be considered as an approval by the commission of any proposed contract by the district with other bodies, under which it is sought to define the water rights and the conflicting claims of any persons thereto, but should be considered solely as an authorization by this commission to the public utility company to dispose of its properties at the price named in the petition, to-wit, the sum of $4,400,100.00."

One of the conditions specified in the order authorizing the transfer was the following: "7. That, upon final comple-

tion of the transfer of the properties, rights and interests of this utility in full compliance with the terms and conditions of the order herein, said San Joaquin and Kings River Canal and Irrigation Company and its said properties, rights and interests shall thereupon and thereby stand relieved of all public utility obligations and liabilities heretofore incurred in connection therewith.''

It is contended by the petitioners that the Railroad Commission failed to exercise or exceeded its jurisdiction under section 51a of the Public Utilities Act (Stats. 1915, p. 149), in refusing to consider the claimed detriment and injuries to the consumers within the district as a result of the transfer and in concerning itself only with an investigation of the question of the public utility aspect of the transferor, the public agency character of the transferee, and the protection to be afforded consumers of the utility who will remain without the district.

The pertinent provisions of section 51a of the Public Utilities Act are the following: ''(a) No railroad corporation . . . or water corporation shall henceforth sell, lease, assign, mortgage or otherwise dispose of or encumber the whole or any part of its railroad . . . plant or system, necessary or useful in the performance of its duties to the public, or any franchise or permit or any right thereunder, nor by any means whatsoever, direct or indirect, merge or consolidate . . . with any other public utility, without having first secured from the commission an order authorizing it so to do. . . . ''

It is not questioned that the canal company is such a privately owned public utility corporation as is defined in the Public Utilities Act and in the case of *Water Users etc. Assn.* v. *Railroad Com.*, 188 Cal. 437, 443 [205 Pac. 682], whose contracts for the sale or other disposition of its working capital or rights useful for public utility purposes must be reviewed pursuant to the requirement of said section 51a, and that authority so to transfer shall first be obtained from the Railroad Commission. Nor is it questioned that the storage district is a public body or agency of the state over which the Railroad Commission has no jurisdiction. (See *City of Pasadena* v. *Railroad Com.*, 183 Cal. 526 [192 Pac. 25] ; *Water Users etc. Assn.* v. *Railroad Com.*, *supra.*)

■ Section 51a of the Public Utilities Act, either read alone or with section 47a of the same act, which provides that the commission shall have power to ascertain for each purpose specified in the act the value of every public utility in the state and every fact and element of value which in its judgment may or does have any bearing on such value, does not in terms require the commission to inquire into the value of the properties sought to be transferred for the purpose of determining the reasonableness or adequacy of the contemplated purchase price. Obviously neither does it hamper the commission's investigation into any of such facts should such an investigation be deemed necessary or advisable in a matter within its jurisdiction.

The respondent commission justifies its refusal to consider the matters urged upon it by the petitioners on the ground that it has no jurisdiction over the storage district; that by the terms of the Storage District Act the power to determine what properties may be necessary for the proper functioning of the district is vested in the directors of the storage district; that under the law the commission could not find that the properties were not necessary to the district nor base a denial of authority to transfer on any such finding; that under the Water Storage District Act the state engineer is required to examine into and determine the practicability, feasibility and utility of the proposed project, and that the voters in the district have the final word as to feasibility by being given an opportunity by vote to accept or reject the plan. The commission urges that the contention that the protesting consumers may be allowed to show in opposition to the approval of the transfer possible injury to them by reason of the fact that they may be compelled to pay a higher rate for water service than they are now paying is concluded by the case of *Tarpey* v. *McClure, supra.* In that case it was held that the legislature, having fixed the boundaries of the district by laying down a fixed rule by which they may be determined, has declared that all lands of the described character, i. e., "already irrigated or susceptible of irrigation from a common source and by the same system of storage and irrigation works," will be benefited, and that the claim that a benefit will not accrue to the land owner who already has a perfected and adequate water service is not meritorious. The commission contends that since the

act declares that the consumers' lands are benefited, should the state engineer determine that they are lands of the described character, the fact that the land owner may be required to pay a higher rate by reason of added benefits in the nature of conservation and storage works which will serve to increase the available supply of water within the district, is a matter between the consumer and the district and is not, therefore, a matter with which the commission is concerned nor a basis on which it has power to deny the application.

The commission bases its refusal to value the properties sought to be transferred in order to determine the reasonableness or otherwise of the purchase price thereof on the fact that section 25 of the Water Storage District Act gives the board of directors of the district the power to determine what properties it shall acquire and what price shall be paid for property voluntarily transferred to the district, and that section 51a of the Public Utilities Act, pursuant to which the commission is required to give or withhold its authority on this application, does not contain any provision which states that the commission *must* value the properties of a public utility which are to be voluntarily transferred. Without stating the further arguments on this point or the cases cited, attention is directed to the fact that the legislature in 1927 amended section 25 of the Water Storage District Act (Stats. 1927, p. 1235), so as to provide that "before any purchase of property located in the district at a price exceeding five hundred thousand dollars, the price shall be approved by the state engineer, who shall give his approval if he finds the price not excessive, and otherwise refuse it." The Railroad Commission concedes and contends that a transfer of public utilities does not put an end to all obligations of service, but states that its only intention by its order, especially referring to condition 7 above set forth, was to approve the provision of the contract that service to consumers within the district shall be carried on under the district plan; that its regulatory functions are not concerned with what will be the relative rights and obligations of the protesting consumers and the storage district, which are matters cognizable by the courts; that its only concern is to determine whether some adequate continued service will be made to these consumers; that when it is shown that service will be continued in accordance with the provisions of the

Water Storage District Act which the legislature has enacted in the exercise of the power to regulate and control the public use of water vested in it by section 1 of article XIV of the constitution, it is concluded by section 58 of the Water Storage District Act as to the benefits to be received by consumers within the district and therefore by the provisions of the act itself as to the future service to be received by the consumers. Section 58 of that act is as follows: "It is hereby declared that the State of California has a paramount interest in the storage, conservation and diversion of water, the prevention of floods, the irrigation, drainage and reclamation of land and the production of electric energy; and that such storage, conservation, diversion, irrigation, prevention of floods, reclamation, drainage and production of electric energy will make productive vast quantities of land that are comparatively unproductive, and will increase production, property valuations and population in the state, make profitable the cultivation of small tracts and promote subdivision of larger tracts, and will promote the welfare and prosperity of all the people. The powers herein conferred upon the state engineer and board of directors are hereby declared to be police and regulatory powers and are necessary to the accomplishment of a purpose that is indispensable to the public interests, and the water storage districts hereunder provided to be formed are districts of the nature of irrigation, reclamation, or drainage districts in respect to all matters contemplated in the provisions of the Constitution of the State of California relating to irrigation, reclamation or drainage. The use of all water required for° the irrigation of the lands of any district formed under the provisions of this act and for domestic and other incidental and beneficial uses within such district, together with the rights of way for canals and ditches, sites for reservoirs and all other property required in fully carrying out the provisions of this act is hereby declared to be a public use, subject to the regulation and control of the state, in the manner prescribed by law."

In view of the foregoing and other provisions of the Water Storage District Act, we think the position taken by the Railroad Commission is sound. It is thereby precluded from determining that a transfer to the district would not be beneficial to the consumers included within the district.

That question is left to the determination of other state agencies. When the commission has safeguarded, as it has in its order authorizing the transfer, the rights of consumers of the canal company outside the district and has provided that the consumers within the district shall be served as provided in the Storage District Act, it is clear that the commission has properly performed its functions. With other questions it has no concern. (*Hanlon* v. *Eshleman,* 169 Cal. 200, 203 [146 Pac. 656].)

The Railroad Commission will have no regulatory powers over the service of water which will be made to these protesting consumers when completion of the proposed project is voted favorably by the electors in the district.

That the lands "already irrigated or susceptible of irrigation from a common source and by the same system of storage and irrigation works" will be benefited by their inclusion within a district formed under the act is a question concluded by the legislature. Whether the lands are of the character properly to be included in such a district is not a question for the determination of the Railroad Commission. Whatever water rights and properties are necessary to be acquired by purchase, condemnation or otherwise are matters which the directors of the district, the state engineer and the land owners within the district must decide. In the case of acquisition by purchase, where the price is more than $500,000, the state engineer must determine whether the price is excessive and approve or disapprove the transfer in accordance with his finding. The feasibility, practicability and utility of the project are also questions which by the terms of the act must be heard and determined by the state engineer before the plan is submitted to the voters for their acceptance or rejection. All of the questions which the petitioners seek to have determined by the commission have been concluded by the legislature in the enactment of the Water Storage District Act. By that act the jurisdiction to determine those questions has been vested in other and different governmental agencies in conjunction with the land owners in the district.

Petitioners complain that if none of these matters needs to be determined by the Railroad Commission, then its authority in this case under section 51a of the Public Utilities Act becomes nothing more than a "rubber stamp" approval,

This is not true. The commission must determine whether and to what extent under the showing made by the applicant for authority to transfer the public utility properties the canal company may be properly relieved of its public utility obligations.

We therefore conclude that the Railroad Commission, in the proceeding before it, has regularly exercised its jurisdiction. The contentions of the petitioners have been carefully noted and specific reference to all of them is deemed unnecessary. The fact that the order of the commission specifies the price at which the properties may be transferred of course cannot affect the powers under the Water Storage District Act of the state engineer, whose functions have been transferred to the department of public works (Stats. 1927, p. 462), nor does such fact disturb the effectiveness of the order authorizing the transfer.

The proceedings and order of the Railroad Commission are affirmed.