[Sac. No. 7096. In Bank. Dec. 18, 1959.]

BEATRICE V. DITTUS, as Secretary, State Board of Control, Petitioner, v. ALAN CRANSTON, as State Controller, Respondent.

Louis J. Heinzer and Joseph E. Coomes, Jr., for Petitioner.

Ralph N. Kleps, Legislative Counsel, Angus C. Morrison, Chief Deputy Legislative Counsel, and Lawrence G. Allyn, Deputy Legislative Counsel, as Amici Curiae on behalf of Petitioner.

Stanley Mosk, Attorney General, B. Abbott Goldberg, Assistant Attorney General, Ralph W. Scott and Preble Stolz, Deputy Attorneys General, for Respondent.

GIBSON, C. J.—The Budget Act of 1958 appropriated the sum of $594,089 to be paid from the Fish and Game Preservation Fund to the Secretary of the State Board of Control.[1]

---

[1]The State Board of Control consists of the Director of Finance, the Controller, and a third member appointed by the Governor. (Gov. Code, § 13901.) It is authorized by statute to examine and adjust claims against the state and, with the approval of the Governor, report to the

This sum was reduced by the Governor to $350,000, and petitioner filed a claim with respondent for a warrant in that amount. Respondent rejected the claim, stating that the attorney general had advised that its validity should be determined by a court of competent jurisdiction. In this proceeding in mandamus petitioner seeks to compel respondent to honor her claim.

Two questions are presented for decision: First, is the sum appropriated to be expended for a purpose prohibited by the Constitution? Second, can the appropriation be constitutionally administered?

There are certain fundamental rules which govern us in the consideration of these questions. ■ Courts should exercise judicial restraint in passing upon the acts of coordinate branches of government; the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be declared unconstitutional. (*Lundberg* v. *County of Alameda*, 46 Cal.2d 644, 652 [298 P.2d 1].) ■ The power to determine the facts upon which appropriations are based rests exclusively in the legislative and executive branches of the government, and the function of the courts is to determine the issues of law presented by the face of the legislation and relevant facts of which they can take judicial notice. (*Stevenson* v. *Colgan*, 91 Cal. 649, 652 [27 P. 1089, 25 Am.St. Rep. 230, 14 L.R.A. 459].)

It appears from records of the State Board of Control that the purpose of the appropriation to petitioner is to provide money for the payment of claims of fishermen and fish processing companies arising out of the enactment of two statutes in 1957. One of the statutes, known as the anti-netting bill, closed certain waters to commercial fishing for shad and salmon. (Fish & G. Code, § 8670.) The other, which will hereafter be referred to as chapter 2099, declared that it was the public policy of the state to reimburse, where possible, persons whose boats, nets and other fishing equipment were rendered valueless by the anti-netting bill. Persons so affected were given permission to file claims with the Board of Control, which was to analyze and evaluate them and report to the

Legislature such facts and recommendations concerning them as it deems proper. (See Gov. Code, §§ 16020-16022.) An over-all sum is appropriated to the secretary of the board for the claims approved without specification of claimants or amounts, and payments are made to claimants by the secretary in accordance with records kept during the legislative proceedings.

Legislature. It was provided that the equipment would become the property of the state upon payment of the claims. (Stats. 1957, ch. 2099, p. 3722.)[2]

The appropriation in question, as we have seen, is made payable from the Fish and Game Preservation Fund, and respondent takes the position that the purposes for which that fund may be expended are limited by section 25⅝ of article IV of the Constitution in such a manner as to prohibit use of the fund for claims filed under chapter 2099. The Fish and Game Preservation Fund is composed of revenue obtained in connection with laws for the protection and preservation of fish and game (Fish & G. Code, § 13001), and section 25⅝ provides that all such revenue "shall be used and expended exclusively for the protection, conservation, propagation, and preservation of fish, game, mollusks, or crustaceans and for the administration and enforcement of laws relating thereto."

The Legislature could have concluded that the purchase by the state of equipment affected by the anti-netting bill would promote the administration and enforcement of laws for the protection of fish by taking out of circulation equipment which might be used for illegal fishing in the closed waters, encouraging fishermen to leave the area and fish in other parts of the state, and permitting enforcement personnel who might otherwise be occupied in the area to work elsewhere. (*Cf. Patrick* v. *Riley,* 209 Cal. 350, 357-358 [287 P. 455] [holding that, although the Legislature could enact a statute requiring the destruction of tubercular cattle without including a provision for compensation of the owners, such a provision could constitutionally be included as an inducement to compliance with the statute].) The Legislature could also have concluded that, in enforcing and administering the laws referred to in section 25⅝, the Department of Fish and

---

[2]Chapter 2099 provides: "The Legislature hereby finds and declares that it is the public policy of this State to reimburse, where possible, persons whose boats, nets, and other fishing equipment owned by them May 15, 1957 have been rendered valueless by enactment of Senate Bill No. 525 of the 1957 Regular Session of the Legislature [the anti-netting bill]. . . . Therefore, all persons so affected may file claims with the Board of Control within six months after the effective date of Senate Bill No. 525 for reimbursement for all boats, nets, and other fishing equipment and facilities rendered useless by enactment of Senate Bill No. 525, which boats, nets and fishing equipment shall become property of the State on payment of such claims. The Board of Control shall receive such claims, analyze and tabulate them, taking into consideration the value of such boats, nets and fishing equipment as property of the State, and make a full report thereon to the Legislature not later than the fifth legislative day of the 1958 Regular Session."

Game could make use of the equipment purchased by the state pursuant to chapter 2099. It thus appears that the appropriation promotes the purposes of section 25⅝, and, since the purposes of that section are public in character, it follows that there is no violation of section 31 of article IV of the Constitution, which prohibits a gift of public funds.

The argument of respondent that the appropriation cannot be administered constitutionally regardless of the validity of its purpose appears to be based on the fact that the legislation does not designate the persons to whom payment shall be made or specify the amount a particular individual shall receive but leaves the determination of those matters to the Board of Control pending investigation and provides for no review of the board's action. In reporting to the Legislature on the claims filed under chapter 2099, the board submitted a list of claims but made no recommendation with respect to them because there had not been sufficient time for verification. While the measure was pending in the Legislature, items which were obviously unwarranted were deleted, and a sum was appropriated to pay the remaining claims with the understanding that a thorough study should be conducted by the board to determine the merit of each claim. Respondent asserts there is no authority for the board to evaluate claims for payment after an appropriation is made by the Legislature and that the board here has been given legislative power without adequate standards to guide it.

It is true that the express statutory authority given to the board in sections 16020, 16021 and 16022 of the Government Code contemplates that it shall investigate and adjust claims before reporting to the Legislature. However, there is no law which precludes the Legislature from authorizing the board to examine and adjust claims after an appropriation has been made, and in one instance that has been called to our attention such authority was expressly given to the board. (Cal. Stats. 1949, ch. 1281, p. 2265, § 2.)  Although such authority was not expressly granted here, it is clearly implied. General standards to guide the board in making its determinations are contained in chapter 2099, and it is well qualified from experience to carry out the purpose of the legislation.

Let a peremptory writ of mandamus issue as prayed.

Traynor, J., Schauer, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.