[S. F. No. 21190. In Bank. June 20, 1963.]

LOS ANGELES METROPOLITAN TRANSIT AUTHORITY, Petitioner, v. PUBLIC UTILITIES COMMISSION, Respondent.

Musick, Peeler & Garrett, Gerald G. Kelly and Thomas J. Reilly for Petitioner.

Walter N. Anderson, City Attorney (Manhattan Beach and Gardena), E. K. Davis, Alan M. Firestone, City Attorney (San Diego), Everett M. Glenn, City Attorney (Sacramento), Thomas M. O'Connor, City Attorney (City and County of San Francisco), William F. Bourne, Robert E. Nisbet, Stanley E. Remelmeyer, City Attorney (Torrance), and Spencer Thomas, Jr., City Attorney (Fresno), as Amici Curiae on behalf of Petitioner.

William M. Bennett, Roderick B. Cassidy, Mary Moran Pajalich, Bernard F. Cummins and Richard E. Tuttle for Respondent.

Bodle & Fogel, George E. Bodle and Stephen Reinhardt as Amici Curiae on behalf of Respondent.

PEEK, J.—The Los Angeles Metropolitan Transit Authority seeks review of the validity of an order of respondent Public Utilities Commission compelling it to "comply immediately with the safety rules and other regulations governing the operation of passenger stage corporations and street railroad corporations as contained in General Order No. 98 of the Commission [a compilation of safety and safety-related rules], or any modifications thereof, . . ." and in connection

therewith to "make available to the representatives of the Commission any and all of its records, equipment, and other instrumentalities and property. . . ."

The order was entered pursuant to the mandate of the 1961 amendment to section 3.2 of the Los Angeles Metropolitan Transit Authority Act providing that: "The authority shall be *subject to the jurisdiction* of the Public Utilities Commission with respect to safety rules and other regulations governing the operation of passenger stage corporations and street railroad corporations as contained in General Order No. 98 of the commission, or any modification thereof." (Italics added.)   (Stats. 1961, ch. 1571, p. 3396.)

The essential contention is that so subjecting petitioner to the jurisdiction of respondent commission is contrary to section 23 and related sections of article XII of the California Constitution.   It is urged that article XII allows the Legislature to grant to the commission regulatory jurisdiction over private transportation utilities only, and prohibits the exercise of such jurisdiction by the commission over public transportation corporations such as petitioner.

Petitioner was created in its present legal form by legislative enactment designated the "Los Angeles Metropolitan Transit Authority Act of 1957" (hereinafter referred to as the 1957 act), for the purpose of providing mass transportation in the Los Angeles area.   (See *Los Angeles Met. Transit Authority* v. *Public Utilities Com.*, 52 Cal.2d 655, 659 [343 P.2d 913]; Stats. 1957, ch. 547, p. 1610, § 1.2.)   It operates in Los Angeles, Orange, Riverside, and San Bernardino Counties, transporting passengers, baggage, and mail.   Although the authority was granted considerable independence concerning routes, rates, acquisitions, and other aspects of operations (see *Los Angeles Met. Transit Authority* v. *Public Utilities Com., supra,* 52 Cal.2d 655, 659-661), section 3.11 of the 1957 act provided that *"In the operation of transit facilities, the authority,* and any corporation, association, or individual acting for the authority, *shall adopt and comply with safety regulations prescribed by the Public Utilities Commission applicable to comparable street railway and bus systems."* (Italics added.)   (Stats. 1957, ch. 547, p. 1617.)   The authority was thus directed to "adopt and comply with" respondent commission's passenger system safety regulations in its operations, which began in March 1958.

Apparently the commission made no effort to supervise the authority's safety practices during the period March 1958 through September 15, 1961, the effective date of the amendment to section 3.2 causing petitioner to be "subject to the jurisdiction" of the commission respecting General Order No. 98. Subsequent to that effective date the commission's safety officials contacted the authority concerning the filing of accident reports, equipment, and excess hours reports, as required by General Order 98.[1] The general manager of the authority stated, according to testimony by a commission staff member that ". . . [upon advice of counsel] he would not submit accident reports or any other reports to the Commission in connection with compliance with General Order No. 98." Said refusal was notwithstanding the occurrence of reportable accidents.

In March 1962 respondent commission on its own motion instituted an investigation into the operations and practices of the authority, in order to determine the extent of compliance with General Order 98 and to issue any appropriate orders pursuant to that compilation of safety regulations. Petitioner entered a special appearance at the hearing and moved to dismiss the investigation for lack of jurisdiction.

In determining the constitutionality of the 1961 amendment to section 3.2 of the 1957 act (see Pub. Util. Code, appendix, § 1.1 et seq.), we are confronted with the fundamental doctrine that "Courts should exercise judicial restraint in passing upon the acts of coordinate branches of government; the presumption is in favor of constitutionality, *and the invalidity of the legislation must be clear before it can be declared unconstitutional.*" (Italics added.) (*Dittus* v. *Cranston*, 53 Cal.2d 284, 286 [1 Cal.Rptr. 327, 347 P.2d 671].)

---

[1]Section 17.02 of that order (as effective March 1, 1959) states that accidents reportable to the commission by a passenger stage or street railroad corporation are those involving over $100 property damage (apparently $200 at present) or death or injury to any person, "injury" defined as inability to follow customary life or employment habits for 24 hours or more. Section 11.21 through 11.25 require reports to the commission detailing type and characteristics of each vehicle used, each newly acquired vehicle, those withdrawn from service and leased vehicles. Sections 13.11 through 13.20 prescribe allowable periods of duty by drivers, and for reports covering instances where emergency or other conditions compel drivers to serve excess hours. Such provisions in the general order are in addition to multiple regulations governing equipment specifications, passenger safety practices, and other safety matters such as refueling.

■ Unlike the federal Constitution "our Constitution is not a grant of power but rather a limitation or restriction upon the powers of the Legislature." (*Collins* v. *Riley*, 24 Cal.2d 912, 916 [152 P.2d 169].) Accordingly, we must determine whether the Constitution of this state prohibits the Legislature from granting to the Public Utilities Commission jurisdiction over petitioner to secure compliance with the safety regulations contained in General Order 98 or any modification thereof by the commission.

It is true, as petitioner contends, that section 23 of article XII of our Constitution speaks principally to the vesting of regulatory jurisdiction in respondent commission over privately owned public utilities. But section 23 provides that "Every private corporation . . . operating . . . any commercial railroad, interurban railroad, street railroad, canal, pipe line, plant, or equipment . . . for the transportation or conveyance of passengers, or express matter, or freight of any kind . . . or for the transmission of telephone or telegraph messages, or for the production, generation, transmission, delivery or furnishing of heat, light, water or power . . . to or for the public, *and every common carrier,* is hereby declared to be a public utility subject to such control and regulation by the Railroad Commission [Public Utilities Commission] as may be provided by the Legislature. . . ." (Italics added.) ■ The italicized clause, "and every common carrier," appears to be severable and independent from the preceding portion of section 23 beginning with "Every private corporation."

■ Thus the implication arises from the terms of section 23 that the Legislature, rather than being restricted by that section from conferring jurisdiction over entities such as petitioner, may grant the commission regulatory powers over a common carrier, however organized. The nature of petitioner's passenger, baggage, and mail carrying operations for hire would appear to assure its status as a common carrier. Section 211 of the Public Utilities Code provides that " 'Common carrier' includes: . . . (c) Every 'passenger stage corporation' operating within this State," and section 226 of that code states that " 'Passenger stage corporation' includes every corporation or person engaged as a common carrier, for compensation, in the ownership, control, operation, or management of any passenger stage over any public highway in this State between fixed termini or over a regular route. . . ."

■ The fact that petitioner is a publicly owned, as opposed to a privately owned common carrier, does not take it out of the general category of "common carrier." (See *California* v. *Taylor*, 353 U.S. 553, 561-564 [77 S.Ct. 1037, 1 L.Ed. 2d 1034]; *People* v. *Western Air Lines, Inc.*, 42 Cal.2d 621, 635 [268 P.2d 723].)

The observation was made in *City of Pasadena* v. *Railroad Com.*, 183 Cal. 526, 530-532 [192 P. 25, 10 A.L.R. 1425], that the apparent intent of the framers of section 23 of article XII was to provide for regulation by the commission of privately owned and operated public utilities, as opposed to publicly operated utilities. But section 23 plainly states that "Every private corporation . . . and every common carrier, is hereby declared to be a public utility subject to such control and regulation by the Railroad Commission as may be provided by the Legislature. . . ." Such clear constitutional language must be read according to its expressed, rather than possible intended meaning. (*Pacific Telephone etc. Co.* v. *Eshleman*, 166 Cal. 640, 651 [3] [137 P. 1119, Ann. Cas. 1915C 822, 50 L.R.A. N.S. 652]; see *Lockhart* v. *Wolden*, 17 Cal.2d 628, 631 [111 P.2d 319].) ■ Moreover, the provisions of our Constitution " 'must receive a liberal, practical common-sense construction' " and be "construed where possible to meet changed conditions and the growing needs of the people." (*County of Alameda* v. *Sweeney*, 151 Cal.App.2d 505, 512-513 [312 P.2d 419].) ■ Thus "every common carrier" in section 23 includes the petitioner as a publicly owned transportation utility. This view necessitates disapproval of statements in *City of Pasadena* v. *Railroad Com.*, *supra*, 183 Cal. 526, 530-532, 533 et seq., especially the observation at page 533 that regulatory jurisdiction under article XII includes only the subject of private utility corporations.

Section 23 of our Constitution apparently was enacted with a view to curbing then existing abuses by the private transportation utilities which at that time provided most of our transportation facilities. However, many area-wide public transportation authorities are presently being established to solve the transportation problems of metropolitan regions. It would appear that the Legislature has determined that the safety of operators and passengers of the petitioning metropolitan public authority can best be assured if limited regu-

latory jurisdiction over safety practices is conferred upon respondent commission. ■ " ' . . . A constitution is intended to meet and be applied to any conditions and circumstances as they arise in the course of the progress of the community. The terms and provisions of constitutions are constantly expanded and enlarged by construction to meet the advancing affairs of men. While the powers granted thereby do not change, they do apply in different periods to all things to which they are in their nature applicable.' " (*People* v. *Western Air Lines, Inc., supra,* 42 Cal.2d 621, 635.)

■ Since petitioner has not been able to point to any clear constitutional prohibition against the grant of jurisdiction to respondent commission to inspect its safety practices *(Dittus* v. *Cranston, supra,* 53 Cal.2d 284, 286; *Kotronakis* v. *City & County of San Francisco,* 192 Cal.App.2d 624, 633 [13 Cal.Rptr. 709]), and indeed section 23 of article XII appears to provide a basis for the grant of such power, we must conclude that the Legislature lawfully granted the commission regulatory jurisdiction over petitioner's safety practices, by the 1961 amendment to section 3.2 of the 1957 act.

Even though we have not been referred to a clear constitutional provision or doctrine invalidating the jurisdiction conferred by section 3.2, petitioner has cited statements and language in a number of authorities in support of its position, including those statements in *City of Pasadena* v. *Railroad Com., supra,* 183 Cal. 526, heretofore disapproved. It should be noted that the *City of Pasadena* case is distinguishable in that it did not involve a specific statute conferring jurisdiction to regulate rates charged by that city. (See 183 Cal. at p. 536.) The amendment to section 3.2 expressly and specifically confers such regulatory power over the safety aspects of the authority's operations. (See *City & County of San Francisco* v. *Western Air Lines, Inc.,* 204 Cal.App.2d 105, 131 [22 Cal. Rptr. 216].) Nevertheless statements in *City of Pasadena* to the effect that the Legislature is prohibited by the California Constitution from conferring regulatory jurisdiction over municipally owned public utilities are inconsistent with our instant decision. The reiterations of statements from the *City of Pasadena* case in *Water Users etc. Assn.* v. *Railroad Com.,* 188 Cal. 437, 443 [3] [205 P. 682] and *Baldwin* v. *Railroad Com.,* 206 Cal. 581, 587 [3] [275 P. 425], also are disapproved.

Petitioner and amici curiae in support of petitioner argue that the type of regulation by the commission involved herein

is undesirable from the standpoint of efficient operation of a metropolitan transit system. But whatever the merits of such arguments, any determination thereon is a matter for the Legislature.

The order is affirmed.

Gibson, C.J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.

Petitioner's application for a rehearing was denied July 17, 1963.