[No. F027535. Fifth Dist. Apr. 28, 1999.]

TURLOCK IRRIGATION DISTRICT, Plaintiff and Appellant, v. BARBARA A. HETRICK, as Secretary, etc., Defendant and Respondent; PACIFIC GAS AND ELECTRIC COMPANY, Intervener and Respondent.

## Counsel

Orrick, Herrington & Sutcliffe, W. Douglas Kari, Brett L. Healy; Griffith, Masuda & Godwin, Roger K. Masuda and Matthew L. Emrick for Plaintiff and Appellant.

Triebsch, Frampton, Dorius & Lima and J. Scott Dorius for Defendant and Respondent.

Iathan T. Annand; Jack F. Fallin; and Stephen L. Garber for Intervener and Respondent.

## Opinion

**BUCKLEY, J.—**

### FACTS

Appellant Turlock Irrigation District (TID) is an irrigation district formed and existing under Water Code section 20500 et seq. TID provides water and

electricity to municipal, industrial, commercial and residential customers within Merced, Stanislaus and Tuolumne Counties.

Intervener Pacific Gas and Electric Company (PG&E) is a public utility which provides natural gas to customers in TID's service area. PG&E offers a gas aggregation program permitting "core transport agents" to "aggregate" their customers' natural gas requirements and then purchase the gas and associated gas transportation services for those customers.

On August 27, 1996, TID's board of directors unanimously passed Resolution No. 96-88, which authorized TID to provide natural gas service to its customers, approved a core gas transportation contract with PG&E and directed the secretary to execute a gas supply contract with Purina Mills, Inc. Purina is one of TID's existing electric customers.

Respondent Barbara A. Hetrick, secretary of the board of directors of TID, refused to execute the gas supply contract based on her opinion that it was uncertain whether TID was empowered to provide natural gas service.

Thereafter, on September 18, 1996, TID filed a petition for writ of mandate, seeking a finding that TID has legal authority to provide natural gas service and commanding the secretary to execute the gas supply contract.

On November 4, 1996, PG&E filed a complaint in intervention.

The petition was heard and denied on November 18, 1996. The superior court concluded that TID "does not have the authority to sell gas for a purpose wholly unrelated to irrigation."

## DISCUSSION

■■■ Is TID empowered under the Public Utilities Code or the California Constitution to provide natural gas service to its customers?[1] In a word: no.

TID argues that it is a municipal corporation. It then cites division 5 of the Public Utilities Code which grants to municipal corporations the right to "acquire, construct, own, operate, or lease any public utility." (Pub. Util. Code, § 10002.) TID then argues syllogistically that it has the authority to provide natural gas services to its customers. PG&E argues that TID is a

---

[1]This is a purely legal question which is reviewed de novo based upon the undisputed facts. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].)

public corporation which is inferior to a municipal corporation and possesses more limited powers. As will be explained below, regardless of whether TID is characterized as a municipal or a public corporation, it is also an irrigation district. Legislative enactments governing the powers and purposes of irrigation districts specifically limit such an entity to provision of water and electricity, drainage and to engaging in closely related activities such as operation of cement plants and rock quarries. (Wat. Code, §§ 22075, 22095, 22115; Gov. Code, § 55500.) As specific provisions relating to a particular subject take priority over a general statute covering the same subject (*Merandette* v. *City and County of San Francisco* (1979) 88 Cal.App.3d 105, 113 [151 Cal.Rptr. 580]), the specific statutes limiting the powers and purposes of irrigation districts take priority over the general provisions applicable to all municipal corporations. Provision of natural gas exceeds the scope of power granted to irrigation districts. Therefore, any act taken in furtherance of this unauthorized activity, such as execution of the contested gas supply, would be ultra vires. (Cf. *Allen* v. *Hussey* (1950) 101 Cal.App.2d 457, 472 [225 P.2d 674].)

We begin with a brief overview of statutory enactments enabling and regulating irrigation districts. In 1887, the California Legislature enacted the Wright Act, which gave irrigation districts the power to construct and maintain irrigation and drainage systems. The Wright-Bridgeford Act was passed 10 years later. The principal purpose of this legislation "was to put water to agricultural use. Powers were adequate for securing a water supply and furnishing it to included lands." (Henley, *The Evolution of Forms of Water Users Organizations in California* (1957) 45 Cal.L.Rev. 665, 668; Harding, *Background of California Water and Power Problems* (1950) 38 Cal.L.Rev. 547, 555.) In 1919, the Wright-Bridgeford Act was amended to permit irrigation districts to engage in the generation, distribution and sale of electricity. (Stats. 1919, ch. 370, § 1, p. 778.) In 1943, a new set of enabling statutes known as the Irrigation District Law, codified at Water Code section 20500 et seq., was enacted. This legislation granted irrigation districts authority to "do any act necessary to furnish sufficient water in the district for any beneficial use." (Wat. Code, § 22075.) In 1949, irrigation districts were granted power to acquire rock quarries and other projects for the preparation of sand and cement. (Gov. Code, § 55500.) These statutes remain in force today.

A municipal corporation is a type of public corporation. "Any municipal corporation may acquire, construct, own, operate, or lease any public utility." (Pub. Util. Code, § 10002.) " 'Public utility' as used in this article, means the supply of a municipal corporation alone or together with its inhabitants, or any portion thereof, with water, light, heat, power, sewage

collection, treatment, or disposal for sanitary or drainage purposes, transportation of persons or property, means of communication, or means of promoting the public convenience." (Pub. Util. Code, § 10001.) A municipal corporation may also "establish, purchase, and operate public works to furnish its inhabitants with light, water, power, heat, transportation, or means of communication." (Cal. Const., art. XI, § 9.)

Defining the exact legal nature of districts such as TID is problematic. "What is a 'municipal corporation,' as that term is used in particular provisions of the constitution or in a statute, is often difficult to determine and there is considerable conflict in the decisions. No general rule can be stated." (1 McQuillin, Municipal Corporations (3d ed. 1987) § 2.27, p. 188.) "A 'district' has been variously characterized by the courts as a 'public corporation,' 'municipal corporation,' 'quasi-municipal public corporation,' 'state agency,' 'public agency,' 'agency or auxiliary of the state,' 'public corporation for municipal purposes,' 'quasi-municipal corporation,' and other equally unenlightening descriptions. A glance at the leading municipal text convinces one of the hopelessness of confining 'districts,' 'public corporations,' or 'municipal corporations' within the neat box of a definition." (Hamilton, *"Districts"—What Are They?* (1967) 42 State Bar J. 119, fns. omitted.) These "instrumentalities of local government . . . defy simple definition or easy classification." (*Ibid.*) Irrigation districts are sometimes referred to as municipal corporations, but it seems that they are not municipal corporations in the strict or proper sense of that term as it is usually understood, though they are public corporations for municipal purposes. (*Whiteman* v. *Irrigation District* (1922) 60 Cal.App. 234, 237 [212 P. 706].) They have also been public agencies in the nature of municipal corporations. (*Water Users etc. Assn.* v. *Railroad Com.* (1922) 188 Cal. 437, 443 [205 P. 682], overruled on other grounds by *Los Angeles Met. Transit Authority* v. *Public Util. Com.* (1963) 59 Cal.2d 863 [31 Cal.Rptr. 463, 382 P.2d 583].) And authorities dealing with municipal corporations have been cited and applied in an irrigation district case on the ground that the similarity between the two is so close that the same general principles should be applicable. (*La Mesa etc. Irr. Dist.* v. *Halley* (1925) 197 Cal. 50, 60-61 [239 P. 719].) "An irrigation district has been held to be a municipal corporation within the meaning of some provisions of the state constitution or statutes, but not within another provision." (1 McQuillin, Municipal Corporations, *supra,* § 2.27a, p. 190, fns. omitted.)[2]

However, regardless of the specific legal nature of an irrigation district, it is universally recognized that an irrigation district has only those powers

---

[2]Not surprisingly, the parties each rely on those authorities which support their characterization of TID and discount or ignore cases which reach a different conclusion. Since we do not have the luxury of such selective analysis, it is fortuitous indeed that the question before us can be resolved without weighing in on either side of this monumental debate.

granted to it under the enabling legislation. Government Code section 56037 states that an irrigation district is a "district of limited powers." As early as 1902 it was recognized that "[a]n irrigation district is a public body, and under the Wright law has only such powers as are given to it by that act. Such powers are enumerated in the act." (*Stimson* v. *Alessandro Irr. Dist.* (1902) 135 Cal. 389, 392 [67 P. 1034].) Later, in *Moody* v. *Provident Irr. Dist.* (1938) 12 Cal.2d 389, 394 [85 P.2d 128], the high court declared it to be " 'settled law that an irrigation district . . . has such powers, and is subject to such liabilities as are expressly provided by statute.' " And in *Allen* v. *Hussey, supra,* 101 Cal.App.2d at page 472, it was reiterated that an irrigation district "has only such powers as are given to it by the Legislature." The only implied powers a district of limited powers possesses "are those essential to the limited, declared powers provided by its enabling act." (*Water Quality Assn.* v. *County of Santa Barbara* (1996) 44 Cal.App.4th 732, 746 [52 Cal.Rptr.2d 184].)

As explained, *ante*, irrigation districts are statutorily limited to provision of water, drainage, and electricity and to operation of ancillary facilities such as rock quarries. Assuming for purposes of this analysis only that TID is a municipal corporation, then the general provisions which permit such an entity to engage in a broad array of enterprises collide with those statutes specifically enumerating the activities of irrigation districts and declaring that an irrigation district is a district of limited powers.

As we noted previously, it is a fundamental tenet of statutory construction that when such a conflict appears, the more specific provisions control. ■ "Unless repealed expressly or by necessary implication, a special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject. [Citations.] This is the case regardless of whether the special provision is enacted before or after the general one [citation], and notwithstanding that the general provision, standing alone, would be broad enough to include the subject to which the more particular one relates." (*Conservatorship of Ivey* (1986) 186 Cal.App.3d 1559, 1565 [231 Cal.Rptr. 376]; *People* v. *Tanner* (1979) 24 Cal.3d 514, 521 [156 Cal.Rptr. 450, 596 P.2d 328].) ■ Thus, those provisions specifically addressing the powers and purposes of irrigation districts control over the more general provisions relating to all municipal corporations.

We also reject TID's assertion that if it is a municipal corporation, it is one for all purposes, including determining the scope of its powers. Although an irrigation district has been declared to be akin to a municipal

corporation for taxation and liability purposes (*State of California* v. *Marin Mun. W. Dist.* (1941) 17 Cal.2d 699 [111 P.2d 651]; *Rock Creek etc. Dist.* v. *County of Calaveras* (1946) 29 Cal.2d 7 [172 P.2d 863]), California courts have not concluded a district possesses the full scope of powers municipalities enjoy. On the contrary, such an outcome has been rejected.[3]

In *Crawford* v. *Imperial Irrigation Dist.* (1927) 200 Cal. 318, 326 [253 P. 726], the high court wrote that it was not necessary to determine the strict legal status of an irrigation district because, regardless of whether it is a municipal corporation, the powers granted to it are derived from its enabling statute and "are as different from those exercised by a strictly municipal corporation as the purposes of an irrigation district differ from those of a city or county or other strictly municipal corporation."

More recently, in *Trimont Land Co.* v. *Truckee Sanitary Dist.* (1983) 145 Cal.App.3d 330 [193 Cal.Rptr. 568], the Court of Appeal concluded that even though the tort liability of a sanitary district has been held to be analogous to the rules applicable to a municipal corporation, "for purposes of ascertaining the scope of powers properly exercised by a sanitary district," it should be characterized as a public, not a municipal, corporation. (*Id.* at p. 343.)

Finally, in *Water Quality Assn.* v. *County of Santa Barbara, supra,* 44 Cal.App.4th at pages 746 to 747, it was determined that a sanitation district possessed the authority necessary to adopt ordinances in furtherance of the limited and specified purposes and powers provided by its enabling statute. However, an ordinance in excess of the specific powers delegated to the district was found to be invalid. The court wrote, " ' "[T]he rule is well established that language purporting to define the powers of a municipal corporation is to be strictly construed, and . . . the power is denied where there is any fair, reasonable doubt concerning the existence of the power." ' " (*Id.* at p. 746.)

For these reasons, we conclude that regardless whether TID is characterized as a municipal corporation or a public corporation for municipal purposes, provision of gas service exceeds the scope of its powers. The secretary properly refused to execute the gas supply contract.

---

[3]Taking TID's argument to its logical (illogical?) extreme, as a municipal corporation, there would be no end to the authority given an irrigation district. An irrigation district could build and operate a baseball stadium or a zoo or a theater of performing arts. The possibilities are endless—and serve to illustrate the weakness of TID's position.

## DISPOSITION

The judgment denying the petition for writ of mandate is affirmed. Costs are awarded to respondent Hetrick.

Dibiaso, Acting P. J., and Levy, J., concurred.