BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE MARGUERITE P. BATTERSBY, City Prosecutor, City of Calimesa, has requested an opinion on the following question:
May the members of the board of directors of a public transit agency accept passes for free transportation on the agency's buses in order to perform their duties of monitoring the agency's transportation services?
 CONCLUSION
Members of the board of directors of a public transit agency may accept passes for free transportation on the agency's buses in order to perform their duties of monitoring the agency's transportation services.
 ANALYSIS
Article XII, section 7 of the Constitution provides in part:
 "A transportation company may not grant free passes or discounts to anyone holding an office in this State; and the acceptance of a pass or discount by a public officer, other than a Public Utilities Commissioner, shall work a forfeiture of that office."
We are advised that a joint powers agency (see Gov. Code, §§6500-6599.2), consisting of 14 cities and a county, operates a public bus system in Southern California. May the agency's directors be given free bus passes in order to perform their duties of monitoring the agency's transportation services? We conclude that the constitutional prohibition against the granting of free passes would be inapplicable in the circumstances presented.
In a series of opinions, we have examined the phrase "free passes or discounts" in light of the purposes of the constitutional prohibition. In 67 Ops.Cal.Atty.Gen. 81, 84 (1984), we found that the prohibition against granting free passes was to control "the perceived corruptive influence [consisting] of the granting of special benefits in exchange for legislative favor." Where this purpose is not served, the constitutional prohibition is inapplicable, such as where the public officer is granted a free pass as part of a larger group and the holding of the office itself is irrelevant. (80 Ops.Cal.Atty.Gen. 146 (1997) [frequent flyer miles available to all passengers]; 74 Ops.Cal.Atty.Gen. 26 (1991) [upgrades to first-class granted to all honeymoon couples]; 67 Ops.Cal.Atty.Gen. 81, supra [discounts offered to all spouses of flight attendants]. In our 1984 opinion, we observed:
 "It is unclear from a literary examination of article XII, section 7, whether it applies to a public officer only in such specific capacity, or extends to such officer without regard to his membership in some external class or universe. The article does not directly answer whether a transportation company may grant a discount to a public officer on a certain day or at a ceratin time or hour in which it grants a discount to every other passenger, or as one of many `persons injured' in an accident or wreck as provided in subdivision (c) of section 523 of the Public Utilities Code. In arriving at the meaning of constitutional language, consideration must be given to the words employed, giving to every word, clause and sentence their ordinary significance. If doubt or ambiguity remains, then well recognized extrinsic aids may be introduced. Among these is a consideration of the objective sought to be accomplished. [Citations.]
 "Article XII, section 7 (formerly § 19), was adopted to control the perceived corruptive influences of the railroads on the legislative process. [Citation.] Would the acceptance of a free or discounted transportation pass by a member of the Legislature as a spouse of a flight attendant tend to corrupt the legislative process? It is apparent that the perceived corruptive influence consisted of the granting of special benefits in exchange for legislative favor. Thus, explicitly or implicitly, legislation favorable to the railroads was the quid pro quo. From this perspective, the pertinent question is not whether the pass be gratuitous vis-a-vis the company employee but whether it be granted subject to some express or implied condition of legislative or other official approbation.
 "If, as we assume in the absence of contrary advisement or indication, the sole condition for the receipt of the propounded benefit is the spousal relationship, then the element of corruptive influence appears to be lacking, and the application of the constitutional prohibition would fail to serve its intended objective." (67 Ops.Cal.Atty.Gen. at pp. 83-84.)
Likewise, here, a transit agency giving free bus passes to its own directors would lack the element of corruptive influence. The agency would, in effect, be giving the bus passes to itself. The bus passes would not be given in exchange for legislative favor or other "outside" benefit; the agency's granting of the passes to itself would not constitute the type of conduct contemplated by the electorate in adopting section 7 of article XII of the Constitution.
Rather, the free bus passes would be given so that the directors of the transit agency may perform their official duties in monitoring the agency's transportation services. The monitoring activities required by the agency prevent the bus passes from constituting "free passes or discounts" within the meaning of the constitutional prohibition. Indeed, if the bus passes were not provided to the directors, the directors would be entitled to submit expense claims to the agency for reimbursement of any bus tickets purchased by them. Whether granting free passes or reimbursing the directors, the agency would be responsible for providing the transportation services without cost to the directors.[1]
Similarly, we need not decide whether a member of the board of directors of a public transit district that is a joint powers agency holds an "office" for purposes of the constitutional prohibition. (See Pacific Finance Corp. v. City of Lynwood (1931) 114 Cal.App. 509, 514 ["A public officer is not the offspring of a contract"]; 78 Ops.Cal.Atty.Gen. 60, 62, fn. 2 ["a member of the governing body of a joint exercise of powers agency may not be an officer since the position arises by virtue of a contract"]; 3 Ops.Cal.Atty.Gen. 318, 319 (1944) [prohibition against accepting a free pass or discount directed at officers only].) The members of the board of directors of a joint powers agency may, of course, be public officers in some other capacity.
We conclude that members of the board of directors of a public transit agency may accept passes for free transportation on the agency's buses in order to perform their duties of monitoring the agency's transportation services.
[1] Whether a public transit agency constitutes a "transportation company" for purposes of the constitutional prohibition is beyond the scope of this opinion. The term may possibly refer exclusively to privately owned and operated transportation companies such as railroads, airlines, and cruise ship companies. (See Cal. Const., art. XII, §3; Los Angeles Met. Transit Authority v. Pub. Util. Com. (1963)59 Cal.2d 863, 870; Board of Railroad Commissioners v. Market Street Railway Company (1901) 132 Cal. 677, 678-680; Webster's 3d New Internat. Dict. (1971) p. 461 [company defined as "a chartered commercial organization"].)