BILL LOCKYER Attorney General SUSAN DUNCAN LEE Deputy Attorney General
THE HONORABLE BARBARA S. MATTHEWS, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a water district organized under the California Water District Law enter into an agreement with a land developer for the construction of oversized water facilities to support anticipated growth in the area and enter into agreements with subsequent developers to reimburse the first developer for the construction costs of the oversized facilities?
 CONCLUSION
A water district organized under the California Water District Law may enter into an agreement with a land developer for the construction of oversized water facilities to support anticipated growth in the area and enter into agreements with subsequent developers to reimburse the first developer for the construction costs of the oversized facilities.
 ANALYSIS
We are informed that a water district organized under the California Water District Law (Wat. Code, §§ 34000-38501; "Act")[1] provides drinking water, irrigation water, and sewer services to the residents of its service area. While much of the land is zoned agricultural, land developers have recently submitted proposals for residential subdivisions in various areas of the district. The district's board of directors has determined that the construction of regional water facilities will be necessary to serve this anticipated growth. Under these circumstances, may the district enter into an agreement with the first developer in an area for the developer to construct oversized water facilities and enter into agreements with subsequent developers to reimburse the first developer for the construction costs of the excess capacity? We conclude that the district may do so.
A district organized under the Act may acquire, control, distribute, and sell water and sewer services. (§§ 35400-35509.) "Each district has the power generally to perform all acts necessary or proper to carry out fully the provisions of this division." (§ 35400.) With respect to the construction of water facilities, section 35401 provides:
 "A district may acquire, plan, construct, maintain, improve, operate, and keep in repair the necessary works for the production, storage, transmission, and distribution of water for irrigation, domestic, industrial, and municipal purposes, and any drainage or reclamation works connected therewith or incidental thereto."[2]
Section 35600 additionally states:
 "A district may, within or without the district in the State, acquire by purchase, condemnation, or other legal means all property or rights in property necessary or proper for the district works and to supply the land with sufficient water for all district purposes."[3]
A district may raise money for its purposes by levying assessments or issuing bonds (§§ 35900-37184), or imposing charges, which may vary from place to place within the district to correspond to the value of the services provided (§§ 35470, 36425). A district may contract with other entities, including private corporations or persons, to carry out any of its powers. Section 35850.5 states:
 "A district shall have power to join with one or more public agencies, private corporations or other persons for the purpose of carrying out any of the powers of such district, and for that purpose to contract with such other public agencies or private corporations or persons for the purpose of financing such acquisitions, construction, and operations. . . . Such contracts with other public or private corporations or persons may contain such other and further covenants and agreements as may be necessary or convenient to accomplish the purposes thereof."
Nothing in the Act expressly authorizes a district to enter into an agreement for the construction of oversized water facilities by one land developer and to enter into agreements with subsequent developers to reimburse the first developer for the construction costs of the oversized facilities. In contrast, the Legislature has authorized cities and counties to enter into these types of agreements under provisions of the Subdivision Map Act (Gov. Code, §§ 66410-66499.37). Government Code section 66485
provides:
 "There may be imposed by local ordinance a requirement that improvements installed by the subdivider for the benefit of the subdivision shall contain supplemental size, capacity, number, or length for the benefit of property not within the subdivision, and that those improvements be dedicated to the public. Supplemental length may include minimum sized offsite sewer lines necessary to reach a sewer outlet in existence at that time."
Government Code section 66486 states:
 "In the event of the installation of improvements required by an ordinance adopted pursuant to Section 66485, the local agency shall enter into an agreement with the subdivider to reimburse the subdivider for that portion of the cost of those improvements, including an amount attributable to interest, in excess of the construction required for the subdivision."
Government Code section 66487 provides:
 "In order to pay the costs as required by the reimbursement agreement, the local agency may:
 "(a) Collect from other persons, including public agencies, using such improvements for the benefit of real property not within the subdivision, a reasonable charge for such use.
 "(b) Contribute to the subdivider that part of the cost of the improvements that is attributable to the benefit of real property outside the subdivision and levy a charge upon the real property benefited to reimburse itself for such cost, together with interest thereon, if any, paid to the subdivider.
 "(c) Establish and maintain local benefit districts for the levy and collection of such charge or costs from the property benefited."
The Legislature has also authorized county waterworks districts[4] to enter into similar agreements. Public Contract Code section 20609 provides:
 "Whenever for any reason water system facilities are proposed to be installed in a district by someone other than the district itself, or the installation cost is proposed to be paid by someone other than the district itself, and the facilities are to be thereafter dedicated to the district for public use, and the board determines that it is necessary and convenient to the purposes of the district that the acceptance of said dedication be conditional upon the water system facilities being adequate to serve land other than and in addition to land proposed by the installer to be served thereby, the board may by contract agree to reimburse and may reimburse the installer for the proportionate part of the total cost of such water system facilities which will serve and benefit other land, upon such terms as may be agreed upon."
Public Contract Code section 20610 states:
 "The reimbursement contract may provide that the reimbursement will be made in periodic payments over an agreed period of time not to exceed 10 years, exclusively out of charges imposed upon land and collected from persons owning the land other than the land proposed by the installer to be served by the water system facilities. The other land that may connect to and be served by the water system facilities shall be specified in the contract."
Public Contract Code section 20611 provides:
 "Under no circumstances shall the total amount of all reimbursement payments made or agreed to be made exceed the amount, specified in said contract, for the total cost of the water system facilities exclusive of the costs attributable to the land of the installer. An amount attributable to interest may also be included in the contract, at a rate not to exceed 4 percent per annum from the date of installation to the date of connection of other land to the facilities."
Public Contract Code section 20612 states:
 "Whenever a district has contracted to reimburse an installer for the installation of water system facilities, it may impose upon land and collect from any person owning the land, other than the land designated in the contract as proposed by the installer to be served therefrom, which may connect to and receive water service from or through said water system facilities, a reasonable charge representing the proportionate share of the estimated cost of replacement or the proportionate share of the total installation cost of said water system facilities which is fairly attributable to the land which may receive water service. An amount attributable to interest may be included in the charge at a rate not to exceed 4 percent per annum from the date of installation to the date of connection of other land to the facilities."
It may be argued that when the Legislature has intended to grant authority for a public agency to enter into the agreements in question, it has granted the authority expressly and subject to specific conditions and requirements. (See, e.g., People v.Trevino (2001) 26 Cal.4th 237, 242 ["When the Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a different meaning"]; Traverso v.People ex rel. Dept. of Transportation (1993) 6 Cal.4th 1152,1166 ["`"` [w]here a statute, with reference to one subject contains a given provision, the omission of such a provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed'"'"].)
However, we believe that these statutory schemes governing other public entities serve to validate the proposed agreements in question. They indicate the Legislature's support for the use of such agreements to address the growing needs of a community in a reasonable and practical manner. (See, e.g., Tower ActonHoldings v. Los Angeles County Waterworks Dist. No. 37 (2002)105 Cal.App.4th 590, 593; Long v. City of Fresno (1964)225 Cal.App.2d 59, 61-64; 47 Ops.Cal.Atty.Gen. 86, 87-89 (1966).) We do not view the lack of express authority in the Act as indicating that the Legislature contemplated and then deliberately rejected granting such authority. Rather, we believe the lack of express authority may be explained as the result of an omission by inadvertence or because it was considered unnecessary to include it. (See Barnhart v. Peabody Coal Co.
(2003) 537 U.S. 149, 168; see also California Fed. Savings Loan Assn. v. City of Los Angeles (1995) 11 Cal.4th 342,350-351; Walker v. Superior Court (1988) 47 Cal.3d 112, 124, fn. 4; 58 Ops.Cal.Atty.Gen. 29, 32 (1975).)
A water district organized under the Act is a special-purpose public agency. (See Zack v. Marin Emergency Radio Authority
(2004) 118 Cal.App.4th 617, 632-633; Turlock Irrigation Dist. v.Hetrick (1999) 71 Cal.App.4th 948, 952-953; 88 Ops.Cal.Atty.Gen. 91, 94 (2005).) Such districts may exercise the powers expressly granted by statute or as may fairly be implied from the powers expressly granted. (Turlock Irrigation Dist. v. Hetrick, supra,
71 Cal.App.4th at p. 953; see Dickey v. Raisin Proration ZoneNo. 1 (1944) 24 Cal.2d 796, 810; Zack v. Marin Emergency RadioAuthority, supra, 118 Cal.App.4th at p. 633.)
The implied powers of a special district are those "necessary for the due and efficient administration of powers expressly granted by statute." (Dickey v. Raisin Proration Zone No. 1,supra, 24 Cal.2d at p. 810; see 2A McQuillin, Municipal Corporations (3d ed. rev. 1996) § 10.12, p. 337.) In Zack v.Marin Emergency Radio Authority, supra, 118 Cal.App.4th 617, the court observed with respect to the scope of implied powers of various districts, including a municipal water district:
 "Implied powers may arise not only by statute (see, e.g., Wat. Code, § 31000 [water districts may exercise powers `expressly granted or necessarily implied therefrom']), but also under common law rules of statutory construction. [Citation.]. . . . `"A `district' has been variously characterized by the courts as a `public corporation,' `municipal corporation,' `quasi-municipal public corporation,' `state agency,' `public agency,' `agency or auxiliary of the state,' `public corporation for municipal purposes,' `quasi-municipal corporation,' and other equally unenlightening descriptions. A glance at the leading municipal text convinces one of the hopelessness of confining `districts,' `public corporations,' or `municipal corporations' within the neat box of a definition." [Citation.] These "instrumentalities of local government . . . defy simple definition or easy classification." [Citation.]' [Citation] Notwithstanding the definitional difficulty, districts of the sort we are concerned with here have generally been seen as sufficiently similar to municipal corporations as to be subject to many of the same general principles. [Citation.] It is settled that municipal corporations possess not only such powers as are expressly conferred on them by the Constitution or statutes, but also implied powers. [Citations.] This principle applies as well to `districts of limited powers.' [Citations.]
 "The implied powers of municipal corporations have variously been described as those `[p]owers necessarily arising from those expressly granted, . . . those reasonably inferred from the powers expressly granted,' and those `[p]owers recognized as indispensable to local civil government to enable the municipality to fulfill the objects and purposes for which it was organized and brought into existence.' [Citations.] The criteria are uncommonly flexible. The difference, if any, between powers that are `necessary' to the exercise of powers expressly granted and those which are `indispensable' is not readily apparent. Nor is there a precise definition of `indispensable powers,' `further than the rule that the power must be indispensable as distinguished from merely useful or convenient. . . .' [Citation.] On the other hand, for purposes of determining whether a power is implied, the word `necessary' has been judicially defined in California as meaning `convenient, useful, appropriate or suitable, and not indispensable.' [Citations.] Moreover, `[w]hat is indispensable to the attainment and maintenance of the declared objects and purposes of a municipality has been said to be subject to "change with changing circumstance," so that "what might not have been implied at one time may be implied at another time."' [Citation.]" (Id. at pp. 632-634.)
Here, the powers expressly granted by the Act are both broad enough and specific enough to give a district the legal authority to enter into the proposed arrangements. A district may "join with one or more . . . private corporations or other persons for the purpose of carrying out any of the powers of such district," it may "contract with such . . . private corporations or persons for the purpose of financing such . . . construction," and its "contracts with . . . private corporations or persons may contain such other and further covenants and agreements as may be necessary or convenient to accomplish the purposes thereof." (§ 35850.5.) The powers of a district include the construction of water facilities for the residents of its service area. (§ 35401.)
We note, however, that the board of directors of a district may not act in an arbitrary, capricious, or unreasonable manner. Instead, the board must exercise sound judgment in taking into account the financial burden placed upon the first land developer and fashion agreements that are fair, nondiscriminatory, proportioned, and reasonable in light of the needs of the community as a whole. (See Carlton Santee Corp. v. Padre DamMun. Water Dist. (1981) 120 Cal.App.3d 14, 26-31.)
We conclude that a water district organized under the Act may enter into an agreement with a land developer for the construction of oversized water facilities to support anticipated growth in the area and enter into agreements with subsequent developers to reimburse the first developer for the construction costs of the oversized facilities.
[1] All references hereafter to the Water Code are by section number only.
[2] "`Works' includes works to supply water for domestic, industrial, and municipal purposes, irrigation works, drainage works, reclamation works, distributing systems, dams, reservoirs, and canals." (§ 34033.)
[3] "`Property' embraces all real and personal property, including water, water rights, works, easements, and rights of way." (§ 34031.)
[4] County waterworks districts are organized and operate under the County Waterworks District Law (§§ 55000-55991).