Filed 4/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIA LISSETTE URENA BUCIO,<br><br>    Defendant and Appellant. | 2d Crim. No. B299688<br>(Super. Ct. No. 2008046598)<br>(Ventura County) |

Maria Lissette Urena Bucio appeals an order dismissing her petition for resentencing pursuant to Penal Code[1] section 1170.95. Bucio contends the trial court erred when it found Senate Bill No. 1437 (SB 1437) unconstitutional. We agree and reverse.

**FACTUAL AND PROCEDURAL HISTORY**

Bucio aided and abetted her nephew in a robbery which resulted in the death of a person. The jury found her guilty of robbery and first degree murder, and found true the allegation that the murder occurred during the course of the

---

[1] Further unspecified statutory references are to the Penal Code.

robbery. (§§ 211, 187, 190.2, subd. (a)(17)(A).) The jury found not true the allegation that Bucio aided and abetted the robbery with reckless indifference to human life. (§ 190.2, subd. (d).) The trial court sentenced her to 25 years to life on the murder conviction and stayed the five-year sentence on the robbery conviction pursuant to section 654. We affirmed the judgment in an unpublished decision. (*People v. Bucio* (Apr. 25, 2013, B232504) [nonpub. opn.].)

Following enactment of SB 1437 in 2018, Bucio filed a petition for resentencing pursuant to section 1170.95. She declared she was convicted of first degree murder "pursuant to the felony murder rule or the natural and probable consequences doctrine" and "could not now be convicted because of the changes to [section] 189" because she was "not the actual killer"; "did not, with the intent to kill, aid, abet, . . . or assist the actual killer"; and "was not a major participant in the felony **or** . . . did not act with reckless indifference to human life." The prosecution filed a motion to dismiss the petition on the ground that SB 1437 is unconstitutional.

The trial court found that "SB 1437 is unconstitutional in that it conflicts with . . . Propositions 7 and 115, and improperly invades the province of the executive branch by effectively granting pardons to defendants who have been convicted and sentenced for felony-murder."

After the trial court's ruling, our colleagues in the Fourth Appellate District upheld the constitutionality of SB 1437 in two companion cases: *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270 (*Gooden*) and *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*). We also conclude that SB 1437 is constitutional.

DISCUSSION

The Legislature enacted SB 1437 to "amend the [felony-murder] rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) In so doing, the Legislature sought to "limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (Stats. 2018, ch. 1015, § 1, subd. (e).)

SB 1437 amended section 188, which defines malice. Now, to be convicted of murder, a principal must act with malice aforethought. Malice can no longer "be imputed to a person based solely on [their] participation in a crime." (§ 188, subd. (a)(3).) SB 1437 also amended section 189 to restrict the application of the felony-murder rule and the natural and probable consequences doctrine. Now, to be convicted of felony murder, the participant in a specified felony must be: (1) the actual killer, (2) one who acted with the intent to aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, or (3) a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e).) SB 1437 also added section 1170.95, which permits those convicted of felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court

3

to vacate the murder conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).)

If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner must be resentenced "on any remaining counts in the same manner as if the petitioner had not been previously . . . sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

Here, it is undisputed that Bucio is eligible for relief if SB 1437 is constitutional. The Ventura County District Attorney (District Attorney) contends SB 1437 is unconstitutional because it (1) amends Propositions 7 and 115, (2) violates separation of powers, and (3) amends the Victim Bill of Rights Act of 2008 (Marsy's Law). Whether legislative enactments are constitutional presents a question of law which we review de novo. (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 642.) Like our colleagues in the Fourth Appellate District, we conclude that SB 1437 is constitutional.

### Proposition 7 and Proposition 115

The Legislature may amend or repeal a statute enacted by voter initiative only with the approval of the electorate, unless the initiative statute provides otherwise. (Cal. Const., art. II, § 10, subd. (c).) To determine whether legislation amends a voter initiative, we must decide whether legislation "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*); see also *Gooden*, *supra*, 42 Cal.App.5th at pp. 279-280.) "But this does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an

4

amendment . . . . 'The Legislature remains free to address a "'related but distinct area'" [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit.'" [Citations.]" (*Pearson*, at p. 571, original italics.)

The District Attorney contends SB 1437 unconstitutionally amends Proposition 7 without the electorate's approval. Proposition 7, also known as the Briggs Initiative, was adopted by voters in 1978. It amended section 190 to increase the punishment for first degree murder from a term of life imprisonment with parole eligibility after seven years to a term of 25 years to life, and it increased the punishment for second degree murder from a term of five, six, or seven years to a term of 15 years to life. (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978), §§ 1-2.) The initiative also expanded the special circumstances in which a person would be eligible for the death penalty or life without parole. (*Id.* at §§ 6-7.)

The District Attorney argues SB 1437 unconstitutionally amends Proposition 7 by changing the penalty for murder through indirect means, i.e., by reclassifying murders as lesser crimes. By doing so, the argument goes, the Legislature is attempting to do indirectly that which it cannot do directly. (*In re Oluwa* (1989) 207 Cal.App.3d 439, 446.) We are not persuaded by this argument.

Whether SB 1437 amends Proposition 7 is a question of statutory interpretation. (*Pearson*, *supra*, 48 Cal.4th at p. 571.) We must "first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to

5

the statute or rewrite it to conform to some assumed intent not apparent from that language.  If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voter's intent and understanding of a ballot measure."  (*Ibid.*)

In *Pearson, supra,* 48 Cal.4th at page 573, our Supreme Court considered whether section 1054.9, which provided for postconviction discovery in writ of habeas corpus proceedings, constituted an amendment of Proposition 115, which provided that "[n]o order requiring discovery shall be made in *criminal cases*" (§ 1054.5, subd. (a), italics added).  The court interpreted the language of Proposition 115, including the phrase "criminal cases," to apply to criminal trial proceedings, and not habeas corpus proceedings.  (*Pearson*, at pp. 571-572.)  The court observed that a "habeas corpus matter has long been considered a separate matter from the criminal case itself," and it noted several distinctions between the purpose of discovery in a criminal trial and in a habeas corpus proceeding.  (*Id*. at p. 572.)  Section 1054.9 was not an amendment because it addressed "an area that is *related* to Proposition 115's discovery provisions but, crucially, it is also a *distinct* area."  (*Id*. at p. 573.)

In *People v. Cooper* (2002) 27 Cal.4th 38 (*Cooper*), our Supreme Court considered whether section 2933.1, subdivision (c) amended Proposition 7.  As enacted by the voters, Proposition 7 provided for conduct credits that would reduce a sentence pursuant to article 2.5 of the Penal Code.  (*Cooper*, at p. 45.)  Section 2933.1, subdivision (c), subsequently enacted by the Legislature, limited the presentence conduct credits for felons convicted of murder.  The *Cooper* defendant argued that section 2933.1 was an "invalid modification" of Proposition 7 because it

6

limited his presentence conduct credits. (*Cooper*, at p. 41.) The court disagreed. Article 2.5 of the Penal Code only cited to provisions that authorized awards of *postsentence* conduct credits; it did not cite to provisions limiting *presentence* conduct credits. (*Cooper*, at p. 46.) Accordingly, legislative modification of presentence credits was "not an invalid modification of [Proposition 7]." (*Id*. at p. 47.)

As relevant here, the language of Proposition 7 deals with the penalties for murder, mandating increased minimum terms of incarceration for murders. In contrast, SB 1437 deals with the related but "distinct" subject matter of the elements of murder. (*Gooden*, *supra*, 42 Cal.App.5th at p. 281; *Pearson*, *supra*, 48 Cal.4th at p. 573.) In particular, it is designed to reserve the harshest penalties for persons with the greatest culpability. Thus, it draws a distinction between those who act with intent to kill (or as a "major participant" in a felony or with "reckless indifference to human life") and those who do not. Moreover, SB 1437 "did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder. Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder. In short [SB 1437], did not address punishment at all. Instead, it amended the mental state requirements for murder." (*Gooden*, at p. 282.)

The District Attorney relies on *People v. Kelly* (2010) 47 Cal.4th 1008, 1012 (*Kelly*), in which our Supreme Court considered whether Health and Safety Code section 11362.77 of the Medical Marijuana Program unlawfully amended the voter-

7

enacted Compassionate Use Act of 1996 (CUA; Proposition 215). The CUA provided an affirmative defense for possession and cultivation of marijuana for personal medical purposes. It did not specify the amount of marijuana that a patient or caregiver may possess or cultivate. (*Kelly*, at p. 1013.) The Legislature subsequently enacted Health and Safety Code section 11362.77 to resolve the resulting uncertainty by defining the specific quantities of marijuana that a "'qualified patient'" or primary caregiver may possess or cultivate. (*Kelly*, at p. 1014.)

The court held that Health and Safety Code section 11362.77 was unconstitutional as applied to CUA because it "burdens a defense" by imposing specific quantity limitations where none had existed before. (*Kelly*, *supra*, 47 Cal.4th at p. 1024.) By imposing these limitations upon "'qualified patients'" and caregivers, Health and Safety Code section 11362.77 unlawfully amended the CUA, under which "these individuals are not subject to any specific limits" and "may possess an amount of medical marijuana reasonably necessary" for medical purposes. (*Kelly*, at p. 1043.) Thus, the limitations "effectuate[d] a change in the CUA that takes away from the rights granted by the initiative statute." (*Ibid.*; see also *Cooper*, *supra*, 27 Cal.4th at p. 44 [an amendment includes a legislative act that takes away from an existing initiative].)

It is significant that our Supreme Court held that notwithstanding the invalidity of Health and Safety Code section 11362.77 insofar as it burdened a defense under the CUA, the statute should not be voided in its entirety. (*Kelly*, *supra*, 47 Cal.4th at p. 1047.) A "fundamental proposition" in resolving a legal claim, said the court, is to "speak as narrowly as possible and resort to invalidation of a statute only if doing so is

8

necessary." (*Ibid.*) In particular, courts should presume in favor of the constitutionality of legislation, and "'the invalidity of the legislation must be clear before it can be declared unconstitutional.'" (*Ibid.*; see *Dittus v. Cranston* (1959) 53 Cal.2d 284, 286.)

Unlike *Kelly*, SB 1437 does not "take away" from Proposition 7's provisions that establish minimum punishments for first degree and second degree murder. (*Kelly*, *supra*, 47 Cal.4th at p. 1043.) The punishment for murder remains the same. Penalties and elements of a crime are different. Furthermore, it is not clear that SB 1437 is invalid. We must therefore presume its constitutionality. (*Id.* at p. 1047.)

Acknowledging the distinction between penalties and elements of a crime, the District Attorney argues that when the Legislature enacted Proposition 7, the voters intended to "freeze" the definition of murder as it existed at that time, thereby prohibiting subsequent legislative enactments modifying the elements of murder. We are not persuaded.

""[W]here a statute adopts by specific reference the provisions of another statute . . . such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [Citations.] [¶] . . . [¶] . . . [but] where the reference is general instead of specific, . . . the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . as they may be subjected to elimination altogether by repeal. [Citations.]'" [Citation.]" (*Cooper*, *supra*, 27 Cal.4th at p. 44.)

Here, Proposition 7's lack of specific reference to the elements of murder shows the voters did not intend to "freeze"

9

the definition of murder as it existed when Proposition 7 was enacted. (*Gooden*, *supra*, 42 Cal.App.5th at p. 283.) Proposition 7 did not identify Penal Code provisions defining the offense of murder; instead, it pertained only to the punishment for murder. (*Gooden*, at p. 283.) If the drafters had intended to preclude future revisions to the elements of murder, Proposition 7 could have done so by referring to section 187, which defines murder. (Compare *Gooden*, at p. 283 with *In re Oluwa*, *supra*, 207 Cal.App.3d at pp. 445-446 [statute adopted another provision by "*specific reference*" such that the other provision is incorporated in the form in which it existed at the time of the reference].) But there is nothing in Proposition 7 that limits the rights of the Legislature to define crimes, including the various degrees of a crime, based on current considerations of culpability. (*Gooden*, at p. 283.) Just as societal norms have evolved so that, for example, fatalities caused by drunk drivers can, under some circumstances, be defined as second degree murder (rather than manslaughter) (see *People v. Watson* (1981) 30 Cal.3d 290, 297-298), so too can evolving societal norms be relied upon to distinguish between different levels of culpability arising out of intentional and unintentional homicides.

The District Attorney also contends SB 1437 unconstitutionally amended Proposition 115 without a two-thirds majority (as required by Proposition 115). We again disagree.

As relevant here, Proposition 115 amended section 189 to add select crimes to the list of predicate offenses for first degree felony-murder liability. (Prop. 115, as approved by voters, Prim. Elec. (June 5, 1990), § 9.) It did not otherwise modify the definition, or the elements, of murder.

10

SB 1437 did not amend Proposition 115. (*Gooden, supra*, 42 Cal.App.5th at p. 280; *Lamoureux, supra*, 42 Cal.App.5th at p. 251) SB 1437 did not address "a matter that [Proposition 115] specifically authorizes or prohibits." (*Gooden*, at p. 287.) In particular, SB 1437 did not augment or restrict the list of predicate felonies on which felony murder may be based. Rather, it amended the mental state necessary for murder, which is "a distinct topic not addressed by Proposition 115's text or ballot materials." (*Ibid.*)

The District Attorney also argues Proposition 115 reenacted all of section 189 pursuant to article IV, section 9 of the California Constitution, including the portions that were not expressly modified by the proposition. It asserts that when section 189 was reenacted, the Legislature was thereafter precluded from amending the definitions of murder without a two-thirds majority. But the definition of murder was not modified in, or integral to, Proposition 115. Like Proposition 7, Proposition 115 does not include a specific reference to the definition of murder. (*Gooden, supra*, 42 Cal.App.5th at p. 283.)

Moreover, when technical reenactments are required, but involve "no substantive change" in the affected statutory provision, the Legislature "retains the power to amend the restated provision through the ordinary legislative process." (*County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 214.) Here, neither the language of Proposition 115 nor its ballot materials indicate the voters' intent to address any provision of section 189 *other than* the list of predicate felonies for the felony-murder rule. Therefore, Proposition 115 "does not preclude the Legislature from amending provisions of the reenacted statute that were subject to technical restatement

11

to ensure compliance with article IV, section 9 of the California Constitution." (*Gooden*, *supra*, 42 Cal.App.5th at p. 288.)

### *Marsy's Law*

The District Attorney next contends section 1170.95 conflicts with Marsy's Law's intent to expand and protect victims' rights. (Cal. Const., art. I, § 28, subd. (a)(6).) This contention lacks merit.

Article I, section 28, subdivision (a)(6) of the California Constitution, provides that "[v]ictims of crime are entitled to finality in their criminal cases. Lengthy appeals and other [postjudgment] proceedings that challenge criminal convictions . . . and the ongoing threat that the sentences of criminal wrongdoers will be reduced, prolong the suffering of crime victims for many years after the crimes themselves have been perpetrated. This prolonged suffering . . . must come to an end."

The District Attorney argues that section 1170.95 violates a victim's right to finality and the right to "Truth in Sentencing," which provides that the sentence served will comply with the sentencing order, and "shall not be substantially diminished by early release policies." (Cal. Const., art. I, § 28, subd. (f)(5).) But Marsy's Law "did not foreclose [postjudgment] proceedings altogether. On the contrary, it expressly contemplated the availability of such postjudgment proceedings, including in [article I,] section 28, subdivision (b)(7) of the [California] Constitution, which affords victims a right to reasonable notice of 'parole [and] other [postconviction] release proceedings,' and in subdivision (b)(8), which grants victims a right to be heard at 'post-conviction release decision[s] . . . .'" (*Lamoureux*, *supra*, 42 Cal.App.5th at pp. 264-265.) Nothing in

12

Marsy's Law restricts the Legislature from creating new postconviction procedures, such as section 1170.95.  (See *Santos v. Brown* (2015) 238 Cal.App.4th 398, 404.)

The District Attorney also argues that section 1170.95 violates a victim's right to have the safety of the victims, the victim's family, and the general public considered before any postjudgment release decision is made.  (Cal. Const., art. I, § 28, subd. (b).)  We disagree.  If a court rules that a petitioner is entitled to relief under section 1170.95, it must then resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  Upon resentencing, the court may weigh the same sentencing factors it considers when initially sentencing a defendant, including whether the defendant presents "'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.'  [Citation.]"  (*Lamoureux, supra*, 42 Cal.App.5th at p. 266; see Cal. Rules of Court, rule 4.421(b)(1), (c).)  The trial court's ability to consider these factors "ensures the safety of the victim, the victim's family, and the general public are 'considered,' as required by Marsy's Law."  (*Ibid*.)

### Separation of Powers

Lastly, the District Attorney contends section 1170.95 violates the separation of powers doctrine by infringing upon (1) the governor's exclusive power of clemency and (2) the judiciary's power to resolve specific controversies.  We reject both contentions.

First, section 1170.95 does not infringe upon the governor's commutation power.  (*Lamoureux, supra*, 42 Cal.App.5th at p. 256.)  Although section 1170.95 "can produce outcomes resembling the consequences of an executive

13

commutation . . . [¶] . . . the objective of the Legislature in approving section 1170.95 . . . was not to extend 'an act of grace' to petitioners." (*Id.* at p. 255.)  Rather, the purpose of SB 1437 was, first, to ensure that California fairly addresses the culpability of the individual, and second, to assist in the reduction of prison overcrowding.  (*Id.* at p. 256; see also *Younger v. Superior Court* (1978) 21 Cal.3d 102, 117-118; *Way v. Superior Court* (1977) 74 Cal.App.3d 165, 176-177 [application of the determinate sentencing law would not usurp the governor's clemency power, even though it would incidentally have the effect of commutation in certain instances].)

Moreover, granting a section 1170.95 petition is "not merely an act of grace akin to an exercise of executive clemency." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 256.)  The successful petitioner will have their "murder conviction vacated and . . . be resentenced on any remaining counts."  (§ 1170.95, subd. (a).) "Thus, while some qualifying petitioners certainly may obtain reduced prison sentences under section 1170.95, there is no guarantee of such an outcome."  (*Lamoureux*, at p. 256.)

Second, section 1170.95 does not infringe upon the judiciary's power to resolve specific controversies.  (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 261.)  The District Attorney argues the Legislature may not reopen a judgment of conviction once the case has become final.  But where legislation reopening a final judgment of conviction is no "risk to individual liberty interests" and provides "potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution," such legislation is permissible.  (*Ibid.* [citing to several cases recognizing that reopening of final judgments do not violate the separation of powers]; compare *ibid.*

with *People v. Bunn* (2002) 27 Cal.4th 1 and *People v. King* (2002) 27 Cal.4th 29 [where legislation authorized the refiling of charges against a previously acquitted defendant].)  In fact, there are several examples of remedial legislation authorizing the "ameliorative" reopening of final judgments of conviction, such as Propositions 36 and 47.  (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012), Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014).)  The "prevalence of such legislation . . . confirms there is nothing especially unique about section 1170.95, which appears . . . to constitute a legitimate and ordinary exercise of legislative authority."  (*Lamoureux*, at p. 263.)

## DISPOSITION

The order dismissing the petition for resentencing is reversed, and the matter is remanded to the trial court with directions to grant the petition and resentence Bucio on the remaining counts.  (§ 1170.95, subd. (e).)

CERTIFIED FOR PUBLICATION.



TANGEMAN, J.

We concur:



GILBERT, P. J.



PERREN, J.

15

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Appellant.

Gregory D. Totten, District Attorney, Lisa O. Lyytikainen, Senior Deputy District Attorney, for Plaintiff and Respondent.