Filed 9/11/20  P. v. Rosbrugh CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073776 |
| v. | (Super.Ct.No. FWV05910) |
| CODY A. ROSBRUGH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Knish, Judge.  Reversed and remanded with directions.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General as Amicus Curiae on behalf of Defendant and Appellant.

Jason Anderson, District Attorney, and James R. Secord, Deputy District Attorney, for Plaintiff and Respondent.

1

# I

# INTRODUCTION

In 1994, defendant and appellant Cody A. Rosbrugh and a junior accomplice robbed a mini mart in Rancho Cucamonga, and in the process, stabbed to death a store clerk. The clerk's wife was also stabbed. However, she survived. A jury convicted defendant of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1), along with special circumstance allegations and three other felonies. Defendant was sentenced to serve a term of life without the possibility of parole, plus a consecutive term of seven years.

In 2019, defendant petitioned for resentencing pursuant to section 1170.95, which was enacted by the Legislature through its passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437) and allows individuals convicted of felony-murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction based on Senate Bill 1437's changes to the definition of the crime of murder. Without reaching the merits of the petition, the trial court granted the People's motion to strike defendant's petition for resentencing, finding that Senate Bill 1437 unconstitutionally amended Proposition 7 (Ballot Pamphlet, Gen. Elec. (Nov. 7, 1978) text of Prop. 7 (Proposition 7)) and Proposition 115 (Ballot Pamphlet, Primary Elec. (June 5, 1990) text of Prop. 115 (Proposition 115)).

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

Defendant appeals from the order granting the People's motion to strike his petition to vacate his murder conviction and obtain resentencing under the procedures established by Senate Bill 1437. Defendant argues the trial court erred in finding Senate Bill 1437 unconstitutional. The San Bernardino County District Attorney (District Attorney) attacks the constitutionality of Senate Bill 1437 on numerous grounds, including that it was an invalid attempt to amend Propositions 7 and 115, it violates the separation of powers doctrine, and it violates the rights of crime victims to finality in judgments. The Attorney General submitted an amicus brief defending the constitutionality of Senate Bill 1437.

Our colleagues in Division One of this district have considered and rejected the arguments raised in this appeal in a pair of companion decisions—*People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270 (*Gooden*) and *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*)—and concluded that Senate Bill 1437 is constitutional. Three other Courts of Appeal have reached the same conclusion. (See *People v. Bucio* (2020) 48 Cal.App.5th 300, 307; *People v. Solis* (2020) 46 Cal.App.5th 762, 769 (*Solis*); *People v. Cruz* (2020) 46 Cal.App.5th 740, 747 (*Cruz*); *People v. Smith* (2020) 49 Cal.App.5th 85, 91; *People v. Prado* (2020) 49 Cal.App.5th 480, 491-492 (*Prado*).) This court recently followed suit in *People v. Johns* (2020) 50 Cal.App.5th 46, 54-55 (*Johns*), which involved a conviction based on the felony-murder rule.

We agree with defendant, the Attorney General, and the foregoing cases that Senate Bill 1437 is constitutional. We therefore reverse the order of the trial court and remand the case for further proceedings in accordance with section 1170.95.

II

PROCEDURAL BACKGROUND

On August 30, 1995, a jury found defendant guilty of first degree murder (§ 187, subd. (a); count 1), with special circumstance allegations that the murder was committed during the commission of a robbery (§ 190.2, subd. (a)(17)(i)) and during the commission of a burglary (§ 190.2, subd. (a)(17)(vii)); attempted murder (§§ 187, subd. (a) & 664; count 2); robbery (§ 211; count 3); and burglary (§ 459; count 4). The trial court sentenced defendant to serve a term of life without the possibility of parole for count 1, plus a consecutive term of seven years for count 2. The court stayed imposition of sentence for counts 3 and 4 under section 654.

Defendant appealed, asserting as his sole ground for relief that the trial court erred when it declined to instruct the jury "that he could not be found guilty of murder on a felony murder theory unless he formed the intent to commit the underlying felony before his confederate committed the murder." On May 8, 1997, this court rejected defendant's claim, affirmed the judgment, and ordered a clerical correction to the abstract of judgment. (*People v. Rosbrugh* (May 8, 1997, E017073) [nonpub. opn.].)

On January 1, 2019, Senate Bill 1437 became effective (2017-2018 Reg. Sess.), which amended the felony-murder rule and the natural and probable consequences

4

doctrine as it relates to murder.  (See Stats. 2018, ch. 1015, § 1, subd. (f).)  Senate Bill 1437 also added section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory . . . [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts . . . ."  (§ 1170.95, subd. (a).)

On January 9, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95, requesting that his murder conviction be vacated based on changes to sections 188 and 189, as amended by Senate Bill 1437, and asking to be resentenced.

On March 7, 2019, the District Attorney filed an informal response, arguing defendant failed to state a prima facie case for relief.  On this same day, the District Attorney also filed a motion to strike defendant's petition based on the unconstitutionality of Senate Bill 1437 and resulting statutes.

On September 5, 2019, defendant's appointed counsel filed opposition to the District Attorney's motion to strike.

On September 13, 2019, the trial court heard oral argument on defendant's petition for resentencing.  On this same say, the court also issued a written decision, granting the District Attorney's motion to strike defendant's petition.  The court determined that Senate Bill 1437 unconstitutionally amended Propositions 7 and 115.  The court did not address the District Attorney's alternative claims that Senate Bill 1437 violated

5

Proposition 9 (Marsy's Law) (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9 (Proposition 9)) and the separation of powers doctrine.

On September 24, 2019, defendant filed a notice of appeal from the trial court's order finding Senate Bill 1437 unconstitutional.

III

DISCUSSION

Defendant contends the trial court erred when it found Senate Bill 1437 unconstitutionally amended Propositions 7 and 115. He therefore asserts the order striking his petition for resentencing must be reversed. The District Attorney defends the court's decision and also argues that Senate Bill 1437 violates Marsy's Law and the separation of powers doctrine.

Consistent with the decisions in the cases previously noted, we conclude the Legislature did not amend Proposition 7 or Proposition 115 through its enactment of Senate Bill 1437, and that Senate Bill 1437 does not violate Marsy's Law or separation of powers principles.

A. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, "limit[ed] accomplice liability under the natural and probable consequences doctrine and the felony-murder rule." (*Cruz*, *supra*, 46 Cal.App.5th at p. 755; *Lamoureux*, *supra*, 42 Cal.App.5th at p. 246; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019,

6

S258234.**2**)  Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state."  (*Lamoureux*, at pp. 247-248; *People v. Chun* (2009) 45 Cal.4th 1172, 1182.)  "'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.'"  (*People v. Chun*, at p. 1184; *Lamoureux*, at p. 248.)

Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense."  (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 248; *People v. Chiu* (2014) 59 Cal.4th 155, 161-162.)  "'Because the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'"  (*People v. Flores* (2016) 2 Cal.App.5th 855, 867.)

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent

**2**  Pursuant to California Rules of Court, rule 8.1115, we may rely on cases pending before the Supreme Court as persuasive authority while review is pending.  (Cal. Rules of Court, rule 8.1115(e)(1), eff. July 1, 2016.)

to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) "Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underl[y]ing felony and acted with reckless indifference to human life.'" (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 896; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325-326, review granted Mar. 18, 2020, S260493.)

Senate Bill 1437 also added section 1170.95. That provision creates a procedure for offenders previously convicted of felony murder or under a natural and probable consequences theory to obtain the benefits of these changes retrospectively. Such convicts may petition for relief in the court in which they were convicted. If the petitioner makes a prima facie showing of entitlement to having his or her prior conviction vacated, the petitioner is entitled to receive "a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced." (§ 1170.95, subds. (c), (d)(1).) "If petitioner is entitled to relief pursuant to this section, murder was charged generically, and the target offense was not charged, the

petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes."  (§ 1170.95, subd. (e).)

B.     *Legal principles*

"We begin with the fundamental proposition that in resolving a legal claim, a court should speak as narrowly as possible and resort to invalidation of a statute only if doing so is necessary."  (*People v. Kelly* (2010) 47 Cal.4th 1008, 1047 (*Kelly*); see *Dittus v. Cranston* (1959) 53 Cal.2d 284, 286 ["Courts should exercise judicial restraint in passing upon the acts of coordinate branches of government"].)  Indeed, there is a strong presumption favoring the constitutionality of the Legislature's acts (*Amwest Sur. Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1253), and "courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity."  (*People v. Falsetta* (1999) 21 Cal.4th 903, 912-913; *Dittus v. Cranston*, at p. 286 ["the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be declared unconstitutional"].)

While the Legislature may freely amend or repeal a statute enacted by the Legislature or by referendum, the California Constitution prohibits the Legislature from amending or repealing an initiative statute, unless otherwise specified by the initiative statute itself.  (Cal. Const., art. II, § 10, subd. (c) ["The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors'

9

approval"]; *Prado*, *supra*, 49 Cal.App.5th at pp. 484-485.)  Legislation amends an initiative in violation of the constitutional prohibition when it purports to "'change an existing initiative statute by adding or taking from it some particular provision.'  (*People v. Cooper* (2002) 27 Cal.4th 38, 44.)"  (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*); *Solis*, *supra*, 46 Cal.App.5th at p. 771.)  "If the Legislature amends or repeals an initiative statute without the approval of the electorate, or otherwise violates the constitutional limitation, the legislative act 'is in contravention of the Constitution and hence void.'"  (*Prado*, at p. 486; see *Kelly*, *supra*, 47 Cal.4th at p. 1012.)

This is not to say that "any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes.  'The Legislature remains free to address a "'related but distinct area'"' [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit.""'  (*Pearson*, *supra*, 48 Cal.4th at p. 571, quoting *Kelly*, *supra*, 47 Cal.4th at pp. 1025-1026.)  Thus, in deciding whether a particular legislative act amends an initiative statute, courts "need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits."  (*Pearson*, at p. 571; *Gooden*, *supra*, 42 Cal.App.5th at pp. 279-280.)  The resolution of this question requires a determination of what the electorate contemplated when it passed the initiative, which in turn is a matter of statutory interpretation.  (*Pearson*, at p. 571; *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 ["the voters should get what they enacted, not more and not less"].)

10

"When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson*, *supra*, 48 Cal.4th at p. 571; see *People v. Rizo* (2000) 22 Cal.4th 681, 685.)

C.    *Constitutionality of Senate Bill 1437*

1.    Proposition 7

Proposition 7, also known as the Briggs Initiative and approved by voters in 1978, increased the punishment for first and second degree murder by amending section 190.[3] (*People v. Cooper* (2002) 27 Cal.4th 38, 41-42 (*Cooper*).) "The amendment increased the punishment for first degree murder from an indeterminate term of life imprisonment to a term of 25 years to life, and for second degree murder from a term of five, six, or seven years to 15 years to life in state prison." (*Ibid*.) The version of section 190 enacted by Proposition 7 read: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in

---

[3] We grant the District Attorney's motion asking us to take judicial notice of the ballot pamphlets for Propositions 7 and 115 and certain legislative history related to Senate Bill 1437. (Evid. Code, §§ 450, 452, 453.)

11

the state prison for a term of 25 years to life . . . . [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Prop. 7, *supra*, text of Prop. 7, § 2, italics omitted.)  Proposition 7 also amended sections 190.1 through 190.5, which pertain to imposition of the death penalty and cases involving special circumstance allegations.  (*Johns*, *supra*, 50 Cal.App.5th at p. 56.)  The Legislature may not amend or appeal Proposition 7 without voter approval.  (*Gooden*, *supra*, 42 Cal.App.5th at p. 278.)

The unambiguous language of Proposition 7 "demonstrates the electorate intended the initiative to increase the punishments, or consequences, for persons who have been convicted of murder."  (*Gooden*, *supra*, 42 Cal.App.5th at p. 282; *Cooper*, *supra*, 27 Cal.4th at p. 42 ["The purpose of the Briggs Initiative was to substantially increase the punishment for persons convicted of first and second degree murder."].)

Senate Bill 1437, on the other hand, limited the application of the felony-murder rule and the natural and probable consequences doctrine by amending the mens rea requirements for first and second degree murder.  (*Gooden*, *supra*, 42 Cal.App.5th at p. 282.)  Senate Bill 1437 "did not prohibit what Proposition 7 authorizes by, for example, prohibiting a punishment of 25 years to life for first degree murder or 15 years to life for second degree murder.  Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a punishment of less than 25 years for first degree murder or less than 15 years for second degree murder.  In short, it did not address punishment at all." (*Gooden*, at p. 282.)

12

Nonetheless, the District Attorney asserts that Senate Bill 1437 redefines and narrows accomplice liability for murder, thereby lessening the penalty for murder as then defined and interpreted. The California Supreme Court's decision in *Cooper*, *supra*, 27 Cal.4th 38 illustrates why the District Attorney's analysis is too broad.

The issue in *Cooper* was whether the Legislature unconstitutionally amended Proposition 7 through its enactment of section 2933.1, subdivision (c). (*Cooper*, *supra*, 27 Cal.4th at pp. 41, 44.) Proposition 7 included a provision that authorized postsentence conduct credits for murderers, while section 2933.1, subdivision (c), limited presentence conduct credits for felons convicted of certain offenses including murder. (*Cooper*, at pp. 42-43.) The Court of Appeal determined that the Legislature's limitation of presentence credits was an unconstitutional amendment of Proposition 7 even though the restriction "does not directly contradict the intention of the electorate in approving [Proposition 7]." (*Cooper*, at p. 45.) The California Supreme Court disagreed, determining that because Proposition 7 "does not specifically authorize *or* prohibit presentence conduct credits, any limitation of such credits against defendant's sentence . . . is not an invalid modification of [Proposition 7]." (*Id.* at p. 47, fn. omitted.)

Similarly, Proposition 7 does not specifically authorize or prohibit a restriction of the mens rea requirements for murder. Although an offense's elements and punishment are "closely and historically related," they are distinct from each other. (*Gooden*, *supra*, 42 Cal.App.5th at p. 281; see *People v. Anderson* (2009) 47 Cal.4th 92, 119 ["A . . . penalty provision is not an element of an offense"]; *Robert L. v. Superior*

13

*Court* (2003) 30 Cal.4th 894, 899 ["'A penalty provision is separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged.'"].)  Thus, Proposition 7 does not bar the Legislature from enacting legislation addressing the elements of murder.  (See *Kelly*, *supra*, 47 Cal.4th at p. 1025.)

Based on the foregoing reasons, we determine that the Legislature did not amend Proposition 7 when it enacted Senate Bill 1437.

### 2. Proposition 115

Proposition 115, approved by voters in 1990, made several "'comprehensive reforms'" the electorate found necessary "'to restore balance and fairness to our criminal justice system.'" (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 342 (*Raven*).)  As relevant here, one of the changes was to amend "section 189, the felony-murder statute, . . . to add kidnapping, train wrecking, and various sex offenses to the list of felonies supporting a charge of first degree murder." (*Id*. at p. 344.)  Proposition 115 also "revised the scope of capital liability for aiding and abetting felony murders" by extending death eligibility to those "'who, with reckless indifference to human life and as a major participant' aid[ ] or abet[ ] the crime." (*People v. Banks* (2015) 61 Cal.4th 788, 798.)  The initiative also changed the rules regarding criminal discovery, prohibited post-indictment preliminary hearings, established the District Attorney's right to due process and speedy criminal trials, and allowed hearsay in preliminary hearings.  (*Raven*, at pp. 342-346 [summarizing Prop. 115].)  Proposition 115 can only be amended by statutes passed by a two-thirds vote in each house of the Legislature.  (Prop. 115, *supra*, text of Prop. 115, § 30.)

Both Proposition 115 and Senate Bill 1437 address felony-murder liability. (See *Cruz*, *supra*, 46 Cal.App.5th at pp. 759-760.) This does not end our inquiry, however, because the Legislature may properly "enact[ ] laws addressing the general subject matter of an initiative." (*Kelly*, *supra*, 47 Cal.4th at p. 1025.) We must determine whether Senate Bill 1437 "prohibits what [Proposition 115] authorizes, or authorizes what the initiative prohibits." (*Pearson*, *supra*, 48 Cal.4th at p. 571.)

In *Gooden*, our colleagues in Division One of the Fourth District comprehensively considered the issues raised in this appeal and answered this question narrowly, concluding that Senate Bill 1437 did not amend Proposition 115 because Senate Bill 1437 "did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115. It did not address any other conduct which might give rise to a conviction for murder. Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials." (*Gooden*, *supra*, 42 Cal.App.5th at p. 287, fn. omitted.) We agree with *Gooden*'s conclusion.

Furthermore, as we stated above, the Legislature may enact laws encompassing the same subject matter addressed by a proposition. (See *Kelly*, *supra*, 47 Cal.4th at p. 1025.) What it may not do is enact legislation that "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Pearson*, *supra*, 48 Cal.4th at p. 571.) The District Attorney does not establish that the Legislature has done that here.

15

It does not matter that Proposition 115 included the entire text of section 189, including the unchanged provisions defining the offense. The California Constitution required the inclusion of the unchanged language. (Cal. Const., art. IV, § 9; *County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 206 (*County of San Diego*) ["a statute must be reenacted in full as amended if any part of it is amended"].) Technical reenactment of this sort does not prevent the Legislature from amending portions of a reenacted section that are not "integral to accomplishing the electorate's goals in enacting the initiative" unless there are "other indicia . . . that voters reasonably intended to limit the Legislature's ability to amend that part of the statute." (*County of San Diego*, at p. 214.) "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process." (*Ibid.*)

That is precisely the situation here. Proposition 115 "restates a statutory provision in full (§ 189) to comply with constitutional mandates. Further, . . . there are no indicia in the language of the initiative or its ballot materials indicating the voters intended to address any provision of section 189, except the list of predicate felonies for purposes of the felony-murder rule. Therefore, we conclude the limiting language in Proposition 115 . . . does not preclude the Legislature from amending provisions of the reenacted statute that were subject to technical restatement to ensure compliance with

16

article IV, section 9 of the California Constitution." (*Gooden*, *supra*, 42 Cal.App.5th at p. 288.)

For all of these reasons and the additional reasons set out in *Gooden*, *supra*, 42 Cal.App.5th 270, we conclude that Senate Bill 1437 did not amend Proposition 7 or Proposition 115. "[T]he voters who approved Proposition 7 and Proposition 115 got, and still have, precisely what they enacted—stronger sentences for persons convicted of murder and first degree felony-murder liability for deaths occurring during the commission or attempted commission of specified felony offenses." (*Gooden*, at p. 289.)

### 3. Separation of Powers Principles

Relying primarily on *People v. Bunn* (2002) 27 Cal.4th 1 (*Bunn*) and *People v. King* (2002) 27 Cal.4th 29 (*King*), the District Attorney contends that Senate Bill 1437 violates the separation of powers doctrine because it requires the judiciary to vacate the final judgments of eligible offenders. This same contention was rejected by *Lamoureux*, *supra*, 42 Cal.App.5th at pages 257-264. We agree with *Lamoureux*'s analysis.

"'[T]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by [the state] Constitution.'" (*People v. Birks* (1998) 19 Cal.4th 108, 134.) "A core function of the Legislature is to make statutory law, which includes weighing competing interests and determining social policy. A core function of the judiciary is to resolve specific controversies between parties." (*Perez v. Roe 1* (2006)

17

146 Cal.App.4th 171, 177.) In performing this function, "courts interpret and apply existing laws." (*Ibid*.)

While the separation of powers doctrine prevents "one branch of government from exercising the complete power constitutionally vested in another [citation][,] it is not intended to prohibit one branch from taking action properly within its sphere that has the incidental effect of duplicating a function or procedure delegated to another branch." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 117, italics omitted.) "[I]t is well understood that the branches share common boundaries [citation], and no sharp line between their operations exists. [Citations.]" (*Bunn*, *supra*, 27 Cal.4th at p. 14.)

In *Bunn* and *King*, the California Supreme Court considered whether the Legislature could properly "authorize . . . the filing of a molestation charge even where an accusatory pleading involving the same offense was previously dismissed as time-barred by the courts. The question [was] whether, and to what extent, the separation of powers clause of the California Constitution (art. III, § 3) precludes application of such a refiling provision." (*Bunn*, *supra*, 27 Cal.4th at p. 5, fn. omitted; see *King*, *supra*, 27 Cal.4th at p. 31.) The court concluded refiling was prohibited in *King* because the refiling at issue was authorized only by a statutory amendment enacted after the prior judgment of dismissal was upheld. (*King*, at p. 31.) The court explained that "separation of powers principles preclude retroactive application of refiling legislation in cases where the prior judgment of dismissal was entered or finally upheld before the legislation took effect." (*Ibid*.) The court determined that refiling was permissible in *Bunn*, however,

18

because the dismissal was already subject to a particular refiling law at the time it was entered or finally upheld. (*Bunn*, at pp. 5-6.)

Here, the District Attorney argues that under *Bunn* and *King*, a final judgment of conviction may not be vacated unless the legislation authorizing the judgment to be vacated was in effect before the judgment became final. However, the California Supreme Court's separation of powers analysis in *Bunn* and *King* has not been applied "to bar legislation allowing the reopening of already-final judgments of conviction (as distinct from already-final judgments of dismissal)." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 261, italics omitted; see *Johns*, *supra*, 50 Cal.App.5th at p. 68.) "[D]oing so would threaten the 'substantial precedent [of] remedial legislation authorizing the ameliorative reopening of final judgments of conviction to benefit criminal defendants.' [Citation.]" (*Johns*, at p. 68.)

There is good reason for the distinct treatment of legislation authorizing the refiling of charges in cases with prior judgments of dismissal versus legislation authorizing judgments to be vacated, which is based in "the fundamental purposes underlying the separation of powers doctrine. Power is diffused between coequal branches of government not as an end to itself, but rather to protect the liberty of individuals. [Citations.] A bright-line rule prohibiting interference with final judgments of dismissal in favor of criminal defendants dovetails with this aim, as it eliminates the risk criminal defendants will be subject to retrial for the same offenses of which they were acquitted and—if convicted the second time around— deprived of their individual

19

liberty interests by means of incarceration." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 260.) "Unlike legislation authorizing the refiling of criminal charges against a previously-acquitted defendant, . . . section 1170.95 does not present any risk to individual liberty interests. On the contrary, it provides potentially ameliorative benefits to the only individuals whose individual liberty interests are at stake in a criminal prosecution—the criminal defendant himself or herself." (*Id*. at p. 261.)

Senate Bill 1437 does not qualify as refiling legislation. It restricts the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. And it allows for individuals who were previously convicted of murder under those theories to petition the court to have those convictions vacated. It bears no similarity to refiling legislation. Senate Bill 1437 does not expand (or otherwise involve) a statute of limitations and actually has the opposite effect of refiling legislation: It reduces the number of persons who can be liable for murder by restricting the scope of conduct on the basis of which a person can be convicted of murder. Refiling legislation increases the number of people who can be liable by expanding the timeframe within which liability can be imposed.

The District Attorney has not directed us to any authority "applying the *Bunn* and *King* separation of powers analysis to bar legislation allowing the reopening of already-final judgments of conviction (as distinct from already-final judgments of dismissal), and [like *Lamoureux*] we have found none." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 261, italics omitted.) Accordingly, we decline to extend the California Supreme Court's

analysis in *Bunn* and *King* to Senate Bill 1437's resentencing provision and reject the District Attorney's separation of powers claim.

4.      Marsy's Law

The District Attorney also argues that Senate Bill 1437 violates the rights of crime victims to finality of judgments as enunciated in Marsy's Law, which was passed by voter initiative as Proposition 9. In addition, the District Attorney argues that Senate Bill 1437 violates Marsy's Law by purportedly depriving victims of their right to safety. These arguments too were rejected by *Lamoureux*, *supra*, 42 Cal.App.5th at pages 264-266. We again agree with the analysis in *Lamoureux*.

Marsy's Law, approved by voters in 2008, made several constitutional and statutory amendments to "'"[p]rovide [crime] victims with rights to justice and due process"' [citation], and to '"eliminat[e] parole hearings in which there is no likelihood a murderer will be paroled . . . ."'" [Citation.]" (*In re Vicks* (2013) 56 Cal.4th 274, 281-283.) "The measure's findings express a number of grievances, including . . . the failure of the criminal justice system to give victims '"notice of important hearings in the prosecutions of their criminal wrongdoers, failure to provide them with an opportunity to speak and participate, failure to impose actual and just punishment upon their wrongdoers, and failure to extend to them some measure of finality to the trauma inflicted upon them by their wrongdoers."'" (*Id*. at p. 282.)

21

As relevant here, Marsy's Law amended the California Constitution to provide victims the right "[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings" and "[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made." (Cal. Const., art. I, § 28, subds. (b)(9), (b)(16).) To promote finality, Marsy's Law amended Penal Code provisions pertaining to parole, namely, sections 3041.5, 3043, and 3044. (Prop. 9, *supra*, text of Prop. 9, §§ 5.1-5.3.) Marsy's Law can only be amended by voter initiative or by two-thirds majority in both houses of the Legislature. (Prop. 9, *supra*, text of Prop. 9, § 9.)

However, Marsy's Law "did not foreclose postjudgment proceedings altogether." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 264.) Instead, it "expressly contemplated the availability of such postjudgment proceedings" by referring to "'parole [and] other post-conviction release proceedings'" and to "'post-conviction release decision[s].'" (*Id.* at pp. 264-265; see Cal. Const., art. I, § 28, subd. (b)(7) & (8).) "It would be anomalous and untenable for us to conclude . . . that the voters intended to categorically foreclose the creation of any new postjudgment proceedings not in existence at the time Marsy's Law was approved simply because the voters granted crime victims a right to a 'prompt and final conclusion' of criminal cases. (Cal. Const., art. I, § 28, subd. (b)(9).)" (*Lamoureux*, at p. 265, fn. omitted.)

Moreover, while the District Attorney is correct that section 1170.95 does not authorize a superior court to assess victim and public safety when determining eligibility for relief, if the court grants a section 1170.95 petition, it must resentence the defendant. If the trial court concludes that a petitioner is entitled to have his or her murder conviction vacated and the sentence recalled, the court is then required to "resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. d)(1).) "During resentencing, the court may weigh the same sentencing factors it considers when it initially sentences a defendant, including whether the defendant presents 'a serious danger to society' and '[a]ny other factors [that] reasonably relate to the defendant or the circumstances under which the crime was committed.' [Citation.] At minimum, the [superior] court's ability to consider these factors during resentencing ensures the safety of the victim, the victim's family, and the general public are 'considered,' as required by Marsy's Law." (*Lamoureux*, *supra*, 42 Cal.App.5th at p. 266.)

For these reasons, we conclude, as did our colleagues in *Lamoureux*, that Senate Bill 1437 does not violate Marsy's Law.

## IV

## DISPOSITION

The superior court's postjudgment order is reversed and the matter is remanded for further proceedings under section 1170.95.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

24